# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

ALI SHUKRI AMIN,

*Defendant - Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT ALEXANDRIA

## OPENING BRIEF OF APPELLANT

Jessica N. Carmichael
CARMICHAEL ELLIS & BROCK, PLLC
108 North Alfred Street
1st Floor
Alexandria, VA 22314
703-684-7908
jessica@carmichaellegal.com

*Counsel for Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................iii

INTRODUCTION ......................................................................... 1

STATEMENT OF APPELLATE JURISDICTION .................................. 2

STATEMENT OF THE ISSUES ................................................. 2

STATEMENT OF THE CASE ................................................. 3

STATEMENT OF FACTS ....................................................... 7

SUMMARY OF THE ARGUMENT ...................................... 12

ARGUMENT ....................................................................... 13

I.    Standards of Review ................................................. 13

II.    The probation officer's instructions on: computer monitoring; writing only in English; texting applications and social media platforms; extremist/terroristic materials; and communication with known extremists (the "requested special conditions") are additional special conditions that were not properly promulgated because they were not written or pronounced orally by the district court and Mr. Amin did not have counsel. Therefore, they never became conditions of supervision and Mr. Amin could not be convicted of violating them .............................. 15

III.    Even if the district court had properly promulgated the requested special conditions, the requested special conditions themselves are an improper grant of judicial authority to the probation officer .............................. 24

IV.     Even if the Probation Officer could lawfully command Mr.
        Amin to abide by the requested special conditions, they are
        impermissibly vague, impermissibly broad, are untethered
        to any particular conduct or rationale, and violate Mr.
        Amin's First Amendment rights.................................................27

V.      The district court erred in sentencing Mr. Amin to lifetime
        supervision because it is an extreme and unusual remedy
        that was unexplained by the district court and is
        unjustified by the circumstances of Mr. Amin's offense ...........37

CONCLUSION ...........................................................................40

REQUEST FOR ORAL ARGUMENT.......................................................40

CERTIFICATE OF COMPLIANCE........................................................42

# TABLE OF AUTHORITIES

## Cases

*Connally v. Gen. Constr. Co.*,
269 U.S. 385 (1926) ............................................................ 28

*Manning v. Caldwell*,
930 F.3d 264 (4th Cir. 2019) ........................................... 27

*Morris v. Wachovia Sec., Inc.*,
448 F.3d 268 (4th Cir. 2006) ........................................... 14

*Turner v. Safley*,
482 U.S. 78 (1987) ............................................................ 30

*United States v. Alvarado*,
691 F.3d 592 (5th Cir. 2012) ........................................... 38

*United States v. Armel*,
585 F.3d 182 (4th Cir. 2009) ..................................... 13, 31

*United States v. Barber*,
865 F.3d 837 (5th Cir. 2017) ........................................... 25

*United States v. Black*,
No. 21-4022, 2022 U.S. App. LEXIS 11305
(4th Cir. Apr. 26, 2022) ................................................... 39

*United States v. Bolin*,
976 F.3d 202 (2d Cir. 2020) ............................... 29, 35, 36

*United States v. Brooks*,
889 F.3d 95 (2d Cir. 2018) ............................................... 37

*United States v. Browder*,
866 F.3d 504 (2d Cir. 2017) ............................................. 32

*United States v. Brown*,
223 F. App'x 722 (9th Cir. 2007) ..................................... 28

*United States v. C.R.*,
296 F.R.D. 131 (E.D.N.Y. 2013) ................................. 37-38

*United States v. Comer*,
    5 F.4th 535 (4th Cir. 2021) ............................................................. 27

*United States v. Ellis*,
    984 F.3d 1092 (4th Cir. 2021) ........................................ 14, 15, 32, 34

*United States v. Finch*,
    482 F. App'x 840 (4th Cir. 2012) ...................................................... 38

*United States v. Fraga*,
    704 F.3d 432 (5th Cir. 2013) ....................................................... 38, 39

*United States v. Hall*,
    912 F.3d 1224 (9th Cir. 2019) ......................................................... 27

*United States v. Hardin*,
    998 F.3d 582 (4th Cir. 2021) ........................................................... 39

*United States v. Holena*,
    906 F.3d 288 (3d Cir. 2018) ...................................................... 14, 32, 34

*United States v. James*,
    705 F. App'x 207 (4th Cir. 2017) ...................................................... 39

*United States v. Jenkins*,
    854 F.3d 181 (2d Cir. 2017) ............................................................. 37

*United States v. Johnson*,
    48 F.3d 806 (4th Cir. 1995) ............................................................. 19

*United States v. Lifshitz*,
    369 F.3d 173 (2d Cir. 2004) ............................................................. 32

*United States v. Loy*,
    237 F.3d 251 (3d Cir. 2001) ........................................... 28, 35, 36, 37

*United States v. Matthews*,
    47 F.4th 851 (D.C. Cir. 2022) ......................................................... 18

*United States v. Maxwell*,
    285 F.3d 336 (4th Cir. 2002) ........................................................... 13

*United States v. McMiller*,
    954 F.3d 670 (4th Cir. 2020) ........................................................... 14

*United States v. Miller*,
  77 F.3d 71 (4th Cir. 1996) ................................................................ 24

*United States v. Miller*,
  341 F. App'x 931 (4th Cir. 2009) .................................................. 19-20

*United States v. Mora*,
  22 F.3d 409 (2d Cir. 1994) ............................................................... 38

*United States v. Mosley*,
  No. 21-4158, 2022 U.S. App. LEXIS 12607
  (4th Cir. May 10, 2022) ................................................................ 13-14

*United States v. Pruden*,
  398 F.3d 241 (3d Cir. 2005) ............................................................ 31

*United States v. Quinzon*,
  643 F.3d 1266 (9th Cir. 2011) ......................................................... 31

*United States v. Rakhmatov*,
  21-151(L) (2d Cir. Nov. 17, 2022) .................................................. 37

*United States v. Richards*,
  385 F. App'x 691 (9th Cir. 2010) .................................................... 35

*United States v. Sales*,
  476 F.3d 732 (9th Cir. 2007) ....................................................... 32-33

*United States v. Shiraz*,
  784 F. App'x 141 (4th Cir. 2019) ................................... 24, 26, 31, 33

*United States v. Sueiro*,
  59 F.4th 132 (4th Cir. 2023) ............................................................ 31

*United States v. The-Nimrod Sterling*,
  959 F.3d 855 (8th Cir. 2020) ....................................................... 27-28

*United States v. Van Donk*,
  961 F.3d 314 (4th Cir. 2020) ............................................. 27, 29, 30

*United States v. Voelker*,
  489 F.3d 139 (3d Cir. 2007) ....................................................... 24-25

*United States v. Wagner,*
  872 F.3d 535 (7th Cir. 2017) ........................................................ 25

*United States v. West,*
  829 F.3d 1013 (8th Cir. 2016) ................................................... 31-32

*United States v. Worley,*
  685 F.3d 404 (4th Cir. 2012) ..................................................... 14-15

*United States v. Wroblewski,*
  781 F. App'x 158 (4th Cir. 2019) ............................................. 35, 36

## Statutes

18 U.S.C. § 3006A ................................................................. 19, 20

18 U.S.C. § 3231 ........................................................................ 2

18 U.S.C. § 3583 ................................................................. *passim*

28 U.S.C. § 1291 ........................................................................ 2

## Other Authorities

Fed. R. Crim. P. 32.1 ........................................................... 18, 20

# INTRODUCTION

Absent intervention of this Court, 25-year-old Ali Amin will be subject to a lifetime of supervised release in which he will be prohibited from possessing, viewing, or accessing any material that reflects "extremist" views or is "deemed to be inappropriate by the U.S. Probation Office." J.A. 157. The legal infirmities that underwrite Mr. Amin's supervision and now incarceration extend even further because the district court found that Mr. Amin violated supervised release by failing to comply with requirements that were never imposed as conditions of supervision.

To be clear, Mr. Amin admitted his wrongdoing, that is he conceded associating with convicted felons and thereby contravened that condition of supervised release. However, Mr. Amin seeks reprieve from this Court from: being punished for violating requirements that were never made conditions of his supervision; being tethered to terms that are unconstitutional; and being forced into a greater restriction of liberty than is reasonably necessary. Mr. Amin recognizes that a supervisee's rights are constrained, but they are not eviscerated.

## STATEMENT OF APPELLATE JURISDICTION

The United States District Court for the Eastern District of Virginia revoked Mr. Amin's supervised release and imposed a new term of supervision under 18 U.S.C. § 3583(e) and 18 U.S.C. § 3231. On March 31, 2023, the District Court entered a final order finding that Mr. Amin violated the terms of his supervised release and reimposing a lifetime term of supervised release. J.A. 314. Mr. Amin filed a timely notice of appeal on April 11, 2023. J.A. 315. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I.    Were the probation officer's instructions on: computer monitoring; writing only in English; texting applications and social media platforms; extremist/terroristic materials; and communication with known extremists—combined the requested "special conditions"—additional special conditions that were not properly promulgated as they were not written or pronounced orally by the district court and Mr. Amin did not have counsel and therefore, they never became conditions of supervision and Mr. Amin could not be convicted of violating them?

II.  Even if the district court had sentenced Mr. Amin to, or
     properly promulgated and imposed, the requested special
     conditions, are the requested special conditions themselves an
     improper grant of judicial authority to the probation officer?

III. Even if the Probation Officer could lawfully command Mr.
     Amin to abide by the requested special conditions, are they
     impermissibly vague, impermissibly broad, violative of Mr.
     Amin's First Amendment rights, and untethered to any
     particular conduct or rational?

IV.  Did the district court err in sentencing Mr. Amin to lifetime
     supervision?

## STATEMENT OF THE CASE

Ali Amin pled guilty in 2015 to conspiracy to provide material
support and resources to a designated Foreign Terrorist Organization.
J.A. 12-24. He was sentenced to 136 months imprisonment, reduced to
72 months on April 27, 2018 with a lifetime of supervised release. J.A.
58-64. Mr. Amin's supervised release subjected him to the standard
conditions plus two special conditions: 1) the defendant shall provide
the probation officer access to any requested financial information; and

2) the defendant shall be subject to any screening or monitoring of internet use, as directed by the probation officer. J.A. 60-61.

On January 10, 2020, before Mr. Amin was even released from the Bureau of Prisons' custody, the district court held a status hearing to discuss the government's requested modifications of Mr. Amin's conditions of supervision. *See* J.A. 65, J.A. 157. The district court continued this hearing to allow Mr. Amin to be present. *See* J.A. 65. At that next hearing, Mr. Amin explained to the district court that he was indigent and requested an attorney. J.A. 68-70. The district court did not appoint Mr. Amin counsel, but instead continued the hearing to allow Mr. Amin time to prepare arguments. *See* J.A. 68-70.

Soon thereafter, the government formally, by written motion, sought to modify the conditions of Mr. Amin's supervised release to include: that he be prohibited from accessing any material that reflects extremist or terroristic views or is deemed to be inappropriate by the U.S. Probation Office; that he be prohibited from associating with any known extremist or anyone suspected in any known extremist activity; that he be subject to computer monitoring; and that he be prohibited from writing online in a language other than English. *See* J.A. 119-125.

In its pleading, the government acknowledged that the conditions on "extremism" may be unduly vague. *See* J.A. 122. Mr. Amin filed a *pro se* objection to the requested modifications. J.A. 72-118.

The district court held a hearing on July 24, 2020 in which Mr. Amin, having been denied counsel, represented himself. J.A. 131-155. At the hearing, the Court suggested that these modifications already fell within the purview of the conditions previously imposed on Mr. Amin at the time of sentencing (to follow instructions of the probation officer and internet monitoring) and stopped short of imposing them as new special conditions of Mr. Amin's supervision. *See* J.A. 146-153.

Two-and-a-half years later, on January 9, 2023, the United States Probation Officer filed a Petition on Supervised Release alleging that Mr. Amin violated certain conditions of supervision, namely that he:

- Failed to follow instructions of the probation officer by having contact with known extremists;

- Associated with a convicted felon;

- Failed to follow instructions of the probation officer by using an unmonitored device;

- Failed to follow instructions of the probation officer by possessing, viewing, accessing material that reflects extremist or terroristic views.

*See* J.A. 156-159.

Mr. Amin was arrested on this petition and held without bond. *See* J.A. 6, J.A. 8. Following additional investigation by the FBI, the Probation Officer submitted an Addendum to the Petition on Supervised Release alleging that Mr. Amin additionally violated certain other conditions of supervision, namely that he:

- Associated with additional convicted felons;

- Failed to follow instructions of the probation officer by using Internet Relay Chats or Newsgroups to Participate in any online social environment (i.e. Facebook, Twitter, Second Life, LinkedIn, Craigslist, Facetime, WhatsApp, Instagram, video/audio, etc.) or texting applications, which allow the user interaction without authorization of the probation officer and the district court;

- Failed to follow instructions of the probation officer by writing communications online in a language other than English without the approval of the probation officer and/or the district court.

J.A. 245-247.

On March 30, 2023, the district court held a violation hearing. *See* J.A. 245-247. At the violation hearing, Mr. Amin stipulated to violating the condition that he be prohibited from associating with a convicted felon. *See* J.A. 259. He admitted to all the remaining factual allegations in the Petition and Addendum; however, he denied violating the other "special conditions" of supervision based primarily on the legal reasons set forth in this appeal, and he challenged the district court's

imposition of lifetime supervision. *See* J.A. 179-192, J.A. 201-202, J.A. 259-269,

The government chose not to pursue violations based on any allegations on conditions concerning "extremism." *See* J.A. 170. However, Mr. Amin raised issues as to the legality of these conditions in his brief, which the district court did not address. *See* J.A. 179-188. Thus, as a practical matter, it appears that the district court and the probation officer believe Mr. Amin continues to be subject to these requirements. The district court sentenced Mr. Amin to 12 months imprisonment, followed by a second term of lifetime supervision. J.A. 314.

## STATEMENT OF FACTS

At age 17, high school student Ali Amin was arrested for using a pro-ISIS Twitter account to conduct conversations regarding ways to develop financial support for ISIS and for assisting an individual's travel to Syria to fight with ISIS. *See* J.A. 25-31, J.A. 318. Mr. Amin, still a juvenile with no criminal history, waived his right to a transfer hearing, pled guilty as an adult to a charge of conspiracy to provide material support and resources to a designated Foreign Terrorist

Organization, and was sentenced to 136 months, reduced to 72 months. *See* J.A. 58-64.

Upon release from prison, Mr. Amin obtained an Associate's Degree from Northern Virginia Community College in General Studies. J.A. 204. He was one semester away from earning his Master's Degree in Information Technology Management before he was arrested in this matter. *See* J.A. 195, J.A. 222. While Mr. Amin studied for school, he also earned numerous certificates that allowed him to obtain stable, fulfilling employment as a solutions architect. *See* J.A. 205-221. He volunteered at his local Mosque where he enthusiastically, and on his own initiative, undertook tasks such as collecting trash, cleaning bathrooms, and organizing items. He also distributed food and organized events for the Mosque. *See* J.A. 195, J.A. 282, J.A. 293-294.

Mr. Amin's studies and innate curiosity led him to take courses on religion and religious teachings. *See e.g.* J.A. 278. The government will be quick to point out that some of Mr. Amin's communications contained inflammatory sentiments, and that he had pro-ISIS material within the contents of his computer. *See e.g.* J.A. 252. The government will have to admit, however, as it did to the district court, that Mr.

Amin's computer also had material expressing rejections of ISIS ideology, and that the overall amount of material that had anything to do with ISIS was small compared to the full contents of the machine. *See* J.A. 287 ([GOVERNMENT]l: "this hard drive contained an enormous amount of data, most of which had nothing to do with ISIS. And there was some material that was anti-ISIS in nature…").

In addition to studying, working, and volunteering, Mr. Amin also maintained contact with a few individuals he met in prison, and another individual, John Walker Lindh, who was convicted in 2002 (when Mr. Amin was 5 years old) of Supplying Services to the Taliban and Carrying an Explosive during the Commission of a Felony. *See United States v. Lindh*, Case No. 1:02-CR-37 (E.D. Va.). Mr. Amin and Mr. Lindh had dinner on three occasions after attending religious services. The FBI captured these meals on surveillance, which occurred on August 20, 2021, October 1, 2021, and October 29, 2021. *See* J.A. 158, J.A. 166, J.A. 273. It was not until well over a year later that the

FBI brought these dinners to the attention of the probation officer.[1] *See* J.A. 158. At that same time, the FBI also informed the probation officer that Mr. Amin had been chatting online with someone deemed to be a "known extremist" who had recently been arrested in the United Kingdom. J.A. 158. During one of their chats, Mr. Amin referenced using the Linux operating system and, according to the FBI, "interpreted and provided guidance on the teachings of Amad Musa Jabril and Abula AI-Azzam" who "are known by the FBI to have extremist teachings and profess terroristic activities." J.A. 158.

Thereafter, the probation officer issued a violation petition. *See* J.A. 156-159. The probation officer averred Mr. Amin violated standard condition number 9, prohibiting Mr. Amin from associating with a convicted felon, which is undisputed. J.A. 158. As to the other allegations, however, because neither a standard nor special condition spoke to the specific conduct at issue, the probation officer violated Mr.

---

[1] Notably, at the time the FBI saw Mr. Amin and Mr. Lindh conversing, Lindh was also on supervised release out of the same court with the same probation officer. The FBI never conveyed that information to the probation officer while Mr. Lindh was on supervised release, and Mr. Lindh's term of supervision has since expired. *See* J.A. 158.

Amin under the broad condition of failing to follow the instructions of his probation officer. *See* J.A. 158-159.

The probation officer coordinated with the FBI, and on January 11, 2023, Mr. Amin was arrested on the supervised release violation petition while the FBI raided his apartment, seizing a long list of Mr. Amin's personal property. *See e.g.* J.A. 169-170. Mr. Amin was held without bond, and the FBI conducted a review of the confiscated items. *See* J.A. 6. The FBI then provided results of additional findings to the probation officer, who issued an addendum to the violation report, alleging communication with additional convicted felons in violation of standard condition number 9 (which again was undisputed), writing online in a language other than English and using a texting application that was not approved by the probation officer. J.A. 245-247. Again, because neither a standard nor special condition spoke to the conduct about writing in English or social media, the probation officer violated Mr. Amin under the broad condition of failing to follow the instructions of his probation officer. *See* J.A. 245-247. At his violation hearing Mr. Amin contested the legality of these conditions and the way they were

allegedly imposed primarily for the reasons detailed below. *See* J.A.

179-203, J.A. 257-296.

<u>SUMMARY OF THE ARGUMENT</u>

I.     The probation officer's instructions on: computer monitoring;

writing only in English; texting applications and social media

platforms; extremist/terroristic materials; and communication

with known extremists (the "requested special conditions") are

additional special conditions that were not properly

promulgated and never implemented because they were not

written or pronounced orally by the district court and Mr. Amin

did not have counsel. Therefore, they never became conditions

of supervision, and Mr. Amin could not be convicted of violating

them.

II.    Even if the district court had sentenced Mr. Amin to, or later

properly promulgated, the requested special conditions, the

requested special conditions themselves are an improper grant

of judicial authority to the probation officer.

III.   Even if the Probation Officer could lawfully command Mr.

Amin to abide by the requested special conditions, they are

impermissibly vague, impermissibly broad, untethered to any particular conduct or rationale, and violate Mr. Amin's First Amendment Rights.[2]

IV. The district court erred in sentencing Mr. Amin to lifetime supervision because it is an extreme and unusual remedy that was unexplained by the district court and is unjustified by the circumstances of Mr. Amin's offense.

## ARGUMENT

## I. Standards of Review

"The terms and conditions of supervised release are a substantial imposition on a person's liberty." *United States v. Maxwell*, 285 F.3d 336, 342 (4th Cir. 2002). This Court generally reviews supervised-release conditions and a district court's decision to revoke supervised release under the abuse-of-discretion standard. *United States v. Armel*, 585 F.3d 182, 186 (4th Cir. 2009); *United States v. Mosley*, No. 21-4158,

---

[2] With respect to the First Amendment argument, Mr. Amin challenged some of the requested special conditions as violating his First Amendment rights. *See* J.A. 188 (challenge to "extremism" conditions); J.A. 267 (challenge to writing only in English and restrictions on social media/texting). In this appeal he applies that challenge to all requested special conditions.

2022 U.S. App. LEXIS 12607, at *2 (4th Cir. May 10, 2022). A district court abuses its discretion "if its decision is guided by erroneous legal principles or rests upon a clearly erroneous factual finding." *Morris v. Wachovia Sec., Inc.*, 448 F.3d 268, 277 (4th Cir. 2006) (internal quotation marks omitted).

For special conditions of supervised release, the condition must be: "(1) 'reasonably related' to the nature and circumstances of the offense, the history and characteristics of the defendant, and the statutory goals of deterrence, protection of the public, and rehabilitation; (2) 'no greater [a] deprivation of liberty than is reasonably necessary' to achieve those statutory goals; and (3) consistent with any relevant policy statements issued by the Sentencing Commission." *United States v. Ellis*, 984 F.3d 1092, 1098 (4th Cir. 2021) (citing 18 U.S.C. § 3583(d); *United States v. McMiller*, 954 F.3d 670, 676 (4th Cir. 2020)). Indeed, "[t]he same is true when district courts alter conditions of supervised release." *United States v. Holena*, 906 F.3d 288, 291 (3d Cir. 2018). Moreover, "[a] sentencing court must adequately explain its decision and its reasons for imposing [a special condition]." *United States v. Worley*, 685 F.3d 404, 407 (4th Cir. 2012) (citation and internal quotation marks

omitted). Special conditions that fail to comply with § 3583(d) are grounds for vacating the conditions. *See Ellis*, 984 F.3d at 1098 (citing *Worley*, 685 F.3d at 407-09 & n.1).

II. **The probation officer's instructions on: computer monitoring; writing only in English; texting applications and social media platforms; extremist/terroristic materials; and communication with known extremists (the "requested special conditions") are additional special conditions that were not properly promulgated because they were not written or pronounced orally by the district court and Mr. Amin did not have counsel. Therefore, they never became conditions of supervision and Mr. Amin could not be convicted of violating them.**

Approximately two-and-a-half years ago, the government, prompted by the probation office, came before the district court to request that additional special conditions of supervision be added to Mr. Amin's supervision; namely that he be: prohibited from accessing any material that reflects "extremist or terroristic views" or is "deemed to be inappropriate by the U.S. Probation Office"; prohibited from associating with "any known Extremist or anyone suspected in any known Extremist activity;"; subject to unfettered *computer* monitoring as opposed to the original special condition which required only *internet* monitoring; prohibited from using social media or texting applications

without prior approval; and prohibited from writing online in a language other than English. *See* J.A. 60-61, J.A. 119-125.

As explained *supra Statement of the Case*, at the modification hearing, the Court suggested that these conditions already fell within the purview of the conditions previously imposed at the time of Mr. Amin's sentence (to follow instructions of the probation officer and internet monitoring) and stopped short of imposing them as new special conditions of Mr. Amin's supervision. *See* J.A. 146-153. However, these requested special conditions did not fall within the purview of the original supervised release conditions, and they could not.

As an initial matter, if these additional requirements could have been fairly understood as subsumed under the standard condition to follow instructions of the probation office, neither the probation officer nor government would have needed a hearing to modify Mr. Amin's conditions of release to add these additional requirements. Thus, the government's own actions requesting a hearing to modify Mr. Amin's conditions of supervision belie the assertion that these additional requirements were not newly imposed special conditions.

Second, simply looking at the requested conditions on their face, there can be no question that they constitute additional restrictions on Mr. Amin's liberty to which he was not previously subject. The original special condition number 2 was limited to monitoring his *internet* activity, and it did not contain any prohibition against visiting any specific websites, software he could or could not use, operating systems to be utilized, or the language in which he could communicate. *See* J.A. 61. As opposed to original condition, which provided for *internet* monitoring, the probation officer's requested modification sought to monitor all of Mr. Amin's *computer* use, and prohibit him from viewing, using, possessing or accessing material that the probation officer deemed to be "extremist" or "inappropriate." J.A. 122. Whereas previously Mr. Amin could communicate in any language, the probation officer's requested modifications then required Mr. Amin's written online communications to be only in English. *See* J.A. 122

The requested modifications also further restricted the individuals with whom Mr. Amin was prohibited from having contact, from only convicted felons or persons engaged in criminal activity (in the original conditions) to any person that the probation officer deemed to be an

"extremist" in the requested conditions. *Compare* J.A. 60 *with* J.A. 122. And finally, whereas Mr. Amin previously had no restriction on using social media platforms or texting applications, the requested modification prohibited their use without authorization of the probation officer. *Compare* J.A. 60-61 *with* J.A. 122.

Thus, conditions on "extremism," unfettered computer monitoring, contacts with others, social media platforms, texting applications, and writing online only in English were additional special conditions that, if the Court sought to add, were required to be promulgated through the process prescribed in Title 18 United States Code § 3583 and the relevant caselaw.

Among other requirements, 18 U.S.C. § 3583 mandates that a special condition of supervised release be in writing. *See* 18 U.S.C. § 3583(f). Relevant precedent also dictates that they must be pronounced orally by the district court. *See United States v. Matthews*, 47 F.4th 851, 855 (D.C. Cir. 2022) ("as three other circuits have held, the district court … must orally pronounce [the conditions of release] at sentencing.") (citations omitted). Further, a defendant has a right to counsel under Federal Rule of Criminal Procedure 32.1(c)(1). ("Before

modifying the conditions of probation or supervised release, the court must hold a hearing, at which the person has the right to counsel and an opportunity to make a statement and present any information in mitigation."); 18 U.S.C. § 3006A(a)(1)(E) ("Representation shall be provided for any financially eligible person who... is charged with a violation of supervised release or faces modification, reduction, or enlargement of a condition, or extension or revocation of a term of supervised release.").

It is a well-established principle of law that the task of promulgating additional special conditions of supervision cannot be delegated to the probation officer, a principle that the government tacitly acknowledged by filing its motion for modification. *See United States v. Johnson*, 48 F.3d 806, 808 (4th Cir. 1995) (fixing conditions of supervision is a "core judicial function," which cannot be delegated to a probation officer); *United States v. Miller*, 341 Fed. App'x 931, 932-33 (4th Cir. 2009) ("Determination of whether a court has improperly delegated the judicial authority of sentencing is based on distinguishing between the delegation to a probation officer of 'a ministerial act or support service' and the 'ultimate responsibility' of imposing sentence ...

it is permissible to delegate to the probation officer [only] the details of where and when [a] condition will be satisfied.") (internal citations and quotations omitted).

In this case, the requested special conditions were not written in accordance with 18 USC § 3583(f), they were not pronounced orally in accordance with controlling precedent, and Mr. Amin was not provided counsel in accordance with Federal Rule of Criminal Procedure 32.1(c)(1) and 18 U.S.C. § 3006A(a)(1)(E) despite requesting counsel more than once. *See* J.A. 68, J.A. 70. Mr. Amin first explained to the district court:

```
18  But I feel that in order for me to properly articulate my side,
19  it would be probably best for me to have some kind of counsel
20  of some sort because I'm not an expert in the law.  So I do
21  have a motion that I prepared to request counsel, if I could
22  submit that to you.
```

J.A. 68. Mr. Amin then again asked:

```
3            I am not sure as to whether or not those terms are
4    necessarily constitutional, and this is why I requested, or
5    which I have made the request to you to have some kind of
6    representation.  If not, then at least I would like to seek a
7    continuance to give me some time to go to a law library and to
8    attempt to do some kind of research so I can prepare a response
9    to the government's request to broaden the terms of probation.
```

Therefore, because they were not properly promulgated, the requested special conditions never became conditions of Mr. Amin's supervised release, and he cannot be accused of violating requirements that were not placed upon him.

This point is true for each of the requested special conditions. A more detailed analysis is available for the probation officer's allegation that Mr. Amin violated his supervision by using an "unmonitored device" by Mr. Amin's use of an operating system incompatible with RemoteCOM, the computer monitoring software. Mr. Amin's conditions did not require (and as such did not allow the probation officer to instruct) that Mr. Amin be restricted to specific operating systems or submit to unfettered computer monitoring, which is precisely the

nature of the RemoteCOM software.[3] Further, the ED/VA Computer

Monitoring Program Participate Agreement and the Computer &

Internet Data Form, that the probation officer required Mr. Amin to

complete and agree to before he was permitted to use a computer

appears to be predicated on the notion that Mr. Amin is subject to

monitoring of all computers and related equipment rather than just

*internet* monitoring. *See* J.A. 299-300, J.A. 302-313.  In fact, the title

---

[3] Among other restrictive requirements, the RemoteCOM contract instructs: "You shall not possess or let another individual possess an unauthorized computer in your home. ("Unauthorized" means any computer that is not being actively monitored by the monitoring service without prior approval from the Supervising Officer.)" J.A. 102; "You shall not view, subscribe to, download, or transmit any sexually oriented or sexually stimulating material in any medium, including but not limited to text, images, movies, or other multi-media files, in violation of state or federal laws or if the court so orders as a special condition of probation" J.A. 105; "You agree that you will not use any form of encryption, cryptography, steganography, compression, password protected files or other method that might limit access to or change the appearance of data or images without prior written approval from your Supervising Officer or designee. If, for work purposes, password protection is required on any system or files used by you, you will provide the password upon request of the Supervising Officer or designee" J.A. 104; "You voluntarily consent to announced and unannounced examination by the Supervising Officer or designee of any and all computer(s) and/or electronic" J.A. 104; "You will provide the Supervising Officer or designee with a current list of all equipment used or possessed by you, including back-up systems, and external storage devices and media. You will keep this list current." J.A. 106.

alone – Computer & Internet Data Form – acknowledges that computers and the internet are separate and distinct. J.A. 302-313.

These forms require that Mr. Amin: authorize authorities to inspect software and hardware on all computers and related equipment (J.A. 299); keep logs of all computer use and files stored (J.A. 300); disclose all passwords that have access to systems, files, and storage (not just internet) (J.A. 311); and even allow the probation office to advise Mr. Amin's employer or a *potential* employer of computer-related restrictions (J.A. 300). Each of these requirements goes well beyond internet monitoring. Even the instructions related to the internet transcends just internet monitoring. They include prohibitions on creating websites, downloading applications or software, and the type of operating system Mr. Amin could use. J.A. 300. Each of these instructions by the probation officer far exceeds the passive internet monitoring was authorized by the only computer-related condition in Mr. Amin's conditions of supervision. They intrude on every facet of the computer and its use, which in current times, pervades almost every aspect of daily life. Thus, these instructions go beyond the scope of the conditions imposed by the district court, restricting Mr. Amin's liberty

to a far greater extent. As such the probation officer was not authorized to impose these requested special conditions, much less violate Mr. Amin for not following them.

III. **Even if the district court had properly promulgated the requested special conditions, the requested special conditions themselves are an improper grant of judicial authority to the probation officer.**

Not only is the Court prohibited from delegating the enactment of the requested conditions to the Probation Officer, the requested special conditions themselves – even if they had been properly added by the Court – constitute an improper delegation of Judicial authority. "[C]ourts may use nonjudicial officers, such as probation officers, to support judicial functions, as long as a judicial officer retains and exercises ultimate responsibility." *Miller*, 77 F.3d at 77. For example, "while limiting a defendant from operating certain businesses may be appropriate depending on the circumstances, delegating to the probation officer the authority to decide what, if any, types of businesses are proper is a violation of Article III." *United States v. Shiraz*, 784 F. App'x 141, 143 (4th Cir. 2019); *see also United States v. Voelker*, 489 F.3d 139, 154-55 (3d Cir. 2007) (finding condition prohibiting a defendant from associating with minors without the prior

approval of the probation officer constituted an "unbridled delegation of authority"); *United States v. Wagner*, 872 F.3d 535, 542-43 (7th Cir. 2017) (holding condition that permitted treatment provider to determine whether to restrict defendant's access to adult pornography was impermissible delegation); *United States v. Barber*, 865 F.3d 837, 840 (5th Cir. 2017) (vacating condition with language restricting "as deemed necessary and approved by the probation officer[,]" because it creates ambiguity as to whether the district court impermissibly delegated authority).

In this case, the conditions on "extremism" prohibit material that reflects "extremist or terroristic views" or is "deemed to be inappropriate by the U.S. Probation Office" as well as contact with "any known Extremist or anyone suspected in any known Extremist activity." J.A. 157. This leaves the probation officer to decide what material or people are "extremist." Certainly in today's time what constitutes "extremism" is an ever-changing debate. Allowing the probation officer to determine what is "extremism" improperly delegates judicial authority to probation officer. Perhaps even more problematic is the delegation to the probation officer the authority to violate Mr. Amin

for any materials he "deems inappropriate." *See* J.A. 157. This is not even a matter of interpretation; it is straight delegation of judicial authority and an amorphous requirement at that.

The requested special condition on computer monitoring includes the language: "Your cooperation shall include, *but not be limited to*...." J.A. 157. (emphasis added). Failing to place any limits on what the probation officer may require Mr. Amin to do in order to be deemed "cooperative" with the computer monitoring is yet again an improper delegation of judicial authority. It is the Court, not the probation officer, who must place the mandates and the parameters on Mr. Amin's liberty. The same goes for the authority to determine which texting applications or social media platforms are approved. *See Shiraz*, 784 F. App'x at 143 (explaining that the court cannot delegate the authority to the probation officer to decide what, if any, types of business the defendant is prohibited from operating).

**IV. Even if the Probation Officer could lawfully command Mr. Amin to abide by the requested special conditions, they are impermissibly vague, impermissibly broad, are untethered to any particular conduct or rationale, and violate Mr. Amin's First Amendment rights.**

"The void for vagueness doctrine is rooted in the Due Process Clause of the Fifth and Fourteenth Amendments." *Manning v. Caldwell*, 930 F.3d 264, 272 (4th Cir. 2019). "It is principally concerned with providing individuals with adequate notice of what conduct they cannot engage in and with delineating clear limits on the enforcement power of the state." *United States v. Comer*, 5 F.4th 535, 541 (4th Cir. 2021) (citing *United States v. Van Donk*, 961 F.3d 314, 324 (4th Cir. 2020)). Thus, "[a] condition of supervised release is unconstitutionally vague if it doesn't give a probationer 'fair notice of the [punished conduct]' or is 'so standardless that it invites arbitrary enforcement.'" *Id.* (citations omitted). For example, a condition prohibiting a father from contacting his son except "for normal familial relations" was vacated as unduly vague. *See United States v. Hall*, 912 F.3d 1224, 1226 (9th Cir. 2019) (per curiam); *see also United States v. The-Nimrod Sterling*, 959 F.3d 855, 863-64 (8th Cir. 2020) ("The condition orders Sterling to provide any requested financial information, a hopelessly

vague and overbroad term when no context is provided[]") (internal quotations omitted).

When a condition is vague in this way, it also infringes on an individual's First Amendment rights. *See United States v. Brown*, 223 F. App'x 722, 723 (9th Cir. 2007) (holding that the district court's use of the phrase "may connote" in connection with its prohibition on the defendant from wearing clothing or displaying articles that "may connote affiliation with, or membership in" certain street gangs failed to adequately define or provide notice of what apparel defendant should refrain from wearing and therefore it was plain error for the district court to impose such a vague condition implicating First Amendment freedoms[]"); *see also United States v. Loy*, 237 F.3d 251, 267 (3d Cir. 2001) (explaining that the condition of supervision is vague and "with no guidepost for [the defendant], the pornography prohibition as currently written violates due process by failing to provide [the defendant] with adequate notice of what he may and may not do, chilling his First Amendment rights in the process[]") (citing *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926)).

In this case, the government itself acknowledged there may be a vagueness issue with the proposed condition on "extremism." The government wrote in its motion to modify the conditions, "[t]o avoid any claim of undue vagueness, the government hereby proposes amending this last proposed special condition to read: No Communication with Known Violent Extremist: You shall have no contact with any individual you have reason to believe supports the use of illegal violence to coerce or intimidate people or governments." J.A. 122. Nevertheless, the probation officer did not amend the condition, leaving it, as the government put it, "unduly vague." J.A. 122.[4]

Each of the requested special conditions regarding "extremism" do not put a probationer on "fair notice of the [punished conduct]" and are "so standardless that [they] invite[] arbitrary enforcement.'" *Van Donk*, 961 F.3d at 323-24. As discussed *supra* § III, "extremism" can hold a

---

[4] Even changing the condition to be worded as the government suggested would not salvage its fate as unduly vague, overbroad, and in violation of the First Amendment. In *United States v. Bolin*, 976 F.3d 202, 204 (2d Cir. 2020), the Second Circuit held that the condition prohibiting defendant from engaging in violence-promoting speech online infringed his First Amendment right of free speech because the condition was not sufficiently clear to inform defendant of what conduct would result in his being returned to prison, and thus, was vague.

variety of meanings depending on one's perspective. The conditions provide no indication as to what constitutes "extremist" or "terroristic" and certainly no notice as to what will be "deemed to be inappropriate by the U.S. Probation Office." J.A. 122. Similarly, the computer monitoring restriction, which states, "Your cooperation shall include, *but not be limited to….*," J.A. 122. (emphasis added), fails to define any meaningful parameters on what Mr. Amin must do to be deemed "cooperative" with computer monitoring. Thus, it fails to give Mr. Amin"fair notice of the [punished conduct]." *Van Donk*, 961 F.3d at 323-24.

Additionally, the requested special conditions are impermissibly broad and untethered to any particular conduct or rationale. A condition is not reasonably related if "the logical connection" between the condition and factors "is so remote as to render [the condition] arbitrary or irrational." *Turner v. Safley*, 482 U.S. 78, 89-90 (1987) (applying "reasonably related" test in context of prison regulations). The reasonably-related requirement "is a standard with teeth" since "a condition with no basis in the record, or with only the most tenuous basis, will inevitably violate § 3583(d)(2)'s command that such

conditions involve no greater deprivation of liberty than is reasonably necessary." *United States v. Pruden*, 398 F.3d 241, 248-49 (3d Cir. 2005); *see also Armel*, 585 F.3d at 186. The district court must articulate a rational for imposing each condition. *See United States v. Sueiro*, 59 F.4th 132, 144 (4th Cir. 2023) (explaining that the court must "provide some particularized explanation to support [the special conditions[]").

As this Court explained in *United States v. Shiraz*, 784 F. App'x 141, 145 (4th Cir. 2019), the defendant's unfettered computer monitoring condition was "not tethered to any particular conduct and captures all computer activity regardless of any connection to a recidivism risk. [Defendant's] condition monitors 'any and all [of his] activity,' even activity without a connection to the internet. (quoting *United States v. Quinzon*, 643 F.3d 1266, 1271-74 (9th Cir. 2011). Therefore, the "absence of any limitations violates the requirement that the computer-usage conditions avoid restricting [defendant's] liberty more than reasonably necessary, especially given the district court's lack of specific reasoning or analysis." *Id.* (citing *United States v. West*, 829 F.3d 1013, 1021 (8th Cir. 2016) (vacating overbroad condition that

prohibited creating any website, because it failed to tailor the restriction to fit the defendant's crime for aiding and abetting tax evasion)).

This Court previously held that "[b]ecause the condition involves a greater restriction of liberty than is reasonably required by the district court's stated concerns, we vacate this condition…." *Id.*; *see also Ellis*, 984 F.3d at 1095 (the district court abused its discretion in imposing an outright ban on internet access and on possessing legal pornography or entering any location where it may be accessed because the conditions banning legal pornography and internet access could not be sustained as "reasonably related" under 18 U.S.C.S. § 3583(d)(1) and were overbroad under 18 U.S.C.S. § 3583(d)(2)); *Holena*, 906 F.3d at 293 ("[The defendant's] bans are not tailored to his conduct. They apply broadly to many internet and computer uses that have nothing to do with preying on children."); *United States v. Browder*, 866 F.3d 504, 511 (2d Cir. 2017) ("[A] 'monitoring condition must be narrowly tailored, and not sweep so broadly as to draw a wide swath of extraneous material into its net.'") (quoting *United States v. Lifshitz*, 369 F.3d 173, 190 (2d Cir. 2004)); *United States v. Sales*, 476 F.3d 732, 737 (9th Cir.

2007) (explaining that the computer monitoring condition "is overbroad in other respects. A computer monitoring condition in some form may be reasonable. However, to comply with the Fourth Amendment, it must be narrowly tailored -- producing no greater deprivation of liberty than is reasonably necessary[]").

In this case, for all the requested special conditions, like in *Shiraz*, "[t]he district court did not explain why such a broad restriction was necessary...to serve the relevant sentencing factors, nor did it explain why the prior lesser restrictions were ineffective." *Shiraz*, 784 F. App'x 144 (4th Cir. 2019). In fact, with respect to the computer monitoring, the district court said as much at the modification hearing;

```
4          THE COURT:  I don't understand why you need an
5   attorney.  I -- everybody that I put on probation has some kind
6   of computer monitoring with their probation officer, and I'm
7   going to do that in any event.
```

The district court did not provide any rationale for any of the requested special conditions, and there is no such rationale. Like in *Shiraz*, *Ellis*, *Holena*, and the other noted cases, these intrusive and pervasive requested special conditions to which Mr. Amin is allegedly subject are inconsistent with the Sentencing Commission's policy

statements, not reasonably related to the 3553(a) factors, and a greater deprivation of liberty than is necessary to achieve the statutory goals.

For example, with respect to unfettered computer monitoring, it is undisputed that Mr. Amin used his computer for a myriad of legitimate matters, including schooling and employment. While his offense tangentially related to computer use, because it was that was a vehicle to access the internet, the offense itself occurred on the internet. As to the condition that Mr. Amin communicate online only in English, the underlying Statement of Facts describes Mr. Amin's offense as occurring in English, therefore, a prohibition on the use of other languages is not reasonably related to the offense. The requested special conditions were vague, overly broad, and not reasonably related; moreover the Court did not adequately articulate a justification for imposing them.

Additionally, the vague and broad nature of these requested special conditions contribute to infringing on Mr. Amin's First Amendment rights. *See Holena*, 906 F.3d at 294 (explaining that a district court must consider a defendant's First Amendment rights when fashioning conditions of release); *Ellis*, 984 F.3d at 1101 (same).

In *United States v. Wroblewski*, 781 F. App'x 158, 163 (4th Cir. 2019), this Court examined the district court's imposition of a condition that prohibited the defendant from possessing or using any electronic device that can be connected to the internet or any "computer networks" unless approved by the probation officer. This Court held that "[g]iven the centrality of the internet to modern life, the Connected Device Condition operates as an extreme restriction on [Defendant]'s exercise of his First Amendment rights." *See also United States v. Richards*, 385 F. App'x 691, 693 (9th Cir. 2010) (explaining that probation condition "imposed upon the defendant, with respect to public comments concerning [former county commissioner] violates the defendant's First Amendment rights" and that the court has a "continuing commitment to the protections of the First Amendment in the context of written commentary, even when the written commentary is inflammatory and discriminatory."); *Loy*, 237 F.3d at 267 (holding that the defendant's prohibition on possessing all pornography was overly broad, vague, and violated the defendant's First Amendment rights); *Bolin*, 976 F.3d 202, 205-06 ("We [] conclude [] that as a result of its vagueness, the condition

prohibiting [Defendant] from engaging in violence-promoting speech online infringes his First Amendment right of free speech.").

Here, for the reasons explained *infra*, the requested special conditions are vague, overly broad, and untethered to any particular conduct or rationale. Each of these conditions relate to, and infringes upon, Mr. Amin's First Amendment rights. For example, prohibiting possession, use, access, or viewing of "extremist material," is akin to prohibiting possession of pornography in *Loy* or violence-promoting speech in *Bolin*, which violated a defendant's First Amendment rights. *See Loy*, 237 F.3d at 267; *Bolin*, 976 F.3d at 204. Like in *Wroblewski,* Mr. Amin's computer monitoring is a pervasive "extreme restriction" on a device that is central to modern life, unduly impacting Mr. Amin's First Amendment rights. *See Wroblewski*, 781 F. App'x at 163. Mr. Amin is also prohibited from expressing himself in written communication in a language other than English, he is restricted in the use of texting applications and social media platforms, which are other forms of expression, and he is restricted from associating with any known "extremist" all of which violate Mr. Amin's First Amendment rights. The overbreadth and vagueness of all the requested special

conditions only further contribute to the First Amendment violations present in this matter. *See Loy*, 237 F.3d at 267 (explaining that inadequate notice of prohibited conduct violates due process and "chill[s]" First Amendment Rights in the process). Therefore, even if they had been proper in the other respects outlined in sections II and III, these requested special conditions are void, and Mr. Amin could not have been found in violation.

V. **The district court erred in sentencing Mr. Amin to lifetime supervision because it is an extreme and unusual remedy that was unexplained by the district court and is unjustified by the circumstances of Mr. Amin's offense.**

"A lifetime of supervised release is an extreme and unusual remedy," and "cases in which life terms of supervised release have been affirmed have typically involved child pornography or violent crimes." *United States v. Rakhmatov*, 21-151(L), 3 (2d Cir. Nov. 17, 2022) (citing *United States v. Brooks*, 889 F.3d 95, 101, 103 (2d Cir. 2018) (per curiam). It is an "unusually harsh" penalty. *Id.* (citing *United States v. Jenkins*, 854 F.3d 181, 194 (2d Cir. 2017) (vacating a 25-year term of supervised release where "the district court offered no explanation that might justify imposing what amounts to a lifetime of the most intense post-release supervision"); *see also United States v. C.R.*, 296 F.R.D.

131, 135 (E.D.N.Y. 2013) (declining to impose lifetime supervised release because, among other things, it is "too severe" and "inhibitory of rehabilitation"); *United States v. Mora*, 22 F.3d 409, 414 (2d Cir. 1994) ("[i]t is difficult to understand why a life term of supervised release is reasonable for a defendant who is no different from any other recidivist[]").

Courts that impose any supervision, but especially a lifetime of supervision, are required to articulate the reason for the lengthy term. *See United States v. Fraga*, 704 F.3d 432, 442 (5th Cir. 2013) ("the imposition of a lifetime of supervised release affects substantial rights. And where a judge admits to the automatic imposition of a sentence, without regard for the specific facts and circumstances of the case or the range provided for in the statute, then it seriously affects the fairness, integrity, and public reputation of judicial proceedings.") (citing *United States v. Alvarado*, 691 F.3d 592 (5th Cir. 2012)); *United States v. Finch*, 482 F. App'x 840, 841 (4th Cir. 2012) ("[w]hile the court announced its consideration of the appropriate sentencing factors, it did not articulate its application of those factors to [Defendant]'s case or explain why those factors necessitated a term of lifetime supervision.");

*United States v. Hardin*, 998 F.3d 582, 592 (4th Cir. 2021) ("the district court has a duty to explain its imposition of life-altering conditions of supervised release") (citation omitted).

In this case, Mr. Amin's offense did not involve child pornography, nor did he commit a violent crime. Thus, already, his lifetime term of supervision is already well beyond typical and should be viewed critically. That it was imposed – both at the original sentencing hearing (J.A.55) and at the violation hearing (J.A.294) – with no justification as to the "specific facts and circumstances of the case" shows that this lifetime of supervision "seriously affects the fairness, integrity, and public reputation of judicial proceedings." *Fraga*, 704 F.3d at 442; *see also United States v. James*, 705 F. App'x 207, 208 (4th Cir. 2017) ("[t]he district court erred because it failed to explain why it imposed a lifetime term of supervised release."); *United States v. Black*, No. 21-4022, 2022 U.S. App. LEXIS 11305, at *7-8 (4th Cir. Apr. 26, 2022) (explaining that "[a] district court commits procedural error if it, among other things, … fail[s] to adequately explain the chosen sentence," and remanding for failure to address his nonfrivolous mitigation evidence[]").

Mr. Amin's lifetime term of supervision should be vacated. There was no adequate explanation provided, it was not supported in the record, and it cannot be justified based on the facts of his case.

## CONCLUSION

Mr. Amin's prohibitions on "extremism," especially in today's time are amorphous, unknowable conditions. They, along with all of the other instructions the probation officer gave Mr. Amin, were additional special conditions that were not properly promulgated by the district court and never imposed. Even if they had been, these requested special conditions were an improper delegation of authority to the probation officer, vague, overly broad, untethered to any rationale, and violate Mr. Amin's First Amendment rights. Mr. Amin's lifetime term of supervision should be vacated as an extreme and unusual remedy that is unsupported in the record.

## REQUEST FOR ORAL ARGUMENT

Mr. Amin respectfully requests oral argument and submits that such argument will aid the Court in deciding the issues presented in this appeal.

Respectfully Submitted,

ALI SHUKRI AMIN

By Counsel
/s/ Jessica N. Carmichael
Jessica N. Carmichael, Virginia Bar 78339
CARMICHAEL ELLIS & BROCK, PLLC
108 N. Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 684-7908
jessica@carmichaellegal.com

## CERTIFICATE OF COMPLIANCE

1. The foregoing brief has been prepared in a proportionally spaced typeface using Microsoft Word, Century Schoolbook, 14 point.

2. Exclusive of the table of contents; table of citations; certificate of compliance and the certificate of service, the foregoing brief contains 7,541 words.

3. I understand that a material misrepresentation can result in the Court striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief with the word or line printout.


/s/ Jessica N. Carmichael
Jessica N. Carmichael