IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 23-4283

———————————

UNITED STATES OF AMERICA,

*Appellee*,

v.

ALI SHUKRI AMIN,

*Appellant*.

———————————

Appeal from the United States District Court
for the Eastern District of Virginia
at Alexandria
*The Honorable Claude M. Hilton, Senior District Judge*

———————————

BRIEF OF THE UNITED STATES

———————————

Jessica D. Aber
United States Attorney

Gavin R. Tisdale
Assistant United States Attorney

Thomas W. Traxler, Jr.
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700

*Attorneys for the United States of America*

# Table of Contents

**Page**

Table of Authorities ................................................................. iv

Introduction ..........................................................................1

Issues Presented ....................................................................3

Statement of the Case ..............................................................4

    A.    Amin's Underlying Criminal Offense.........................................4

        1.  Amin's Guilty Plea ..............................................................4

        2.  Amin's Sentencing ..............................................................6

    B.    Amin's Start of Supervised Release.........................................7

        1.  Amin's Release from Custody and Start of Internet Monitoring ......................................................................7

        2.  Proceedings Related to the Proposed Internet Requirements ........8

        3.  Amin's Computer Classes While on Supervised Release ...........12

    C.    Amin's Violations of Supervised Release...........................12

        1.  Petition Alleging Violations of Supervised Release....................12

        2.  Arrest of Amin and Search of Apartment ....................................14

        3.  Addendum to Petition ................................................................15

    D.    Revocation Hearing.........................................................17

Summary of Argument................................................................20

Argument.................................................................................23

I.      Amin Cannot Challenge the Probation Officer's Instructions in a
Revocation Proceeding. ...................................................................23

II.    The Probation Officer's Instructions Properly Applied the Internet
Screening/Monitoring Condition. .....................................................25

      A.     The Internet Screening/Monitoring Condition did not
impermissibly delegate authority to the probation officer. ................25

      B.     The probation officer's instructions reasonably applied the
Internet Screening/Monitoring Condition. ..........................................30

          1.    The instruction requiring use of only monitored devices
reasonably applied the Internet Screening/Monitoring
Condition. .......................................................................30

          2.    The instruction requiring Amin to obtain approval to conduct
online communications in languages other than English
reasonably applied the Internet Screening/Monitoring
Condition. .......................................................................33

          3.    The instruction requiring Amin to obtain approval to use
internet chat applications reasonably applied the Internet
Screening/Monitoring Condition. ..................................................33

          4.    The instructions related to Amin's contact with extremists
and possession of extremist materials are not at issue on
appeal. .......................................................................34

      C.     The district court did not need to follow the procedures for
modifying conditions of release when it declined to add the
Internet Requirements as conditions. ..................................................35

III.   The Probation Officer's Instructions that Amin Violated Were Not
Unconstitutionally Vague. ...............................................................38

IV.    The Probation Officer's Instructions Satisfied the Requirements in 18
       U.S.C. § 3583(d). ..........................................................................41

       A.    The probation officer's monitoring instructions were reasonably
             related to the relevant sentencing factors and appropriately
             tailored. ..............................................................................43

       B.    The probation officer's instruction regarding online
             communications in English was reasonably related to the
             relevant sentencing factors. ...............................................47

       C.    The probation officer's instructions did not unlawfully infringe
             upon Amin's First Amendment rights...................................48

V.     Any Error in Holding Amin in Violation for His Failure to Follow the
       Probation Officer's Instructions Was Harmless. ..........................49

VI.    The District Court's Reimposition of a Lifetime Term of Supervised
       Release Based on the Nature of Amin's Violations Was Reasonable. .........51

       A.    The district court's reimposition of lifetime supervised release
             was procedurally reasonable. .............................................52

       B.    The district court's reimposition of lifetime supervised release
             was substantively reasonable. ............................................56

Conclusion ....................................................................................58

Statement Regarding Oral Argument .......................................................59

Certificate of Compliance .......................................................................59

# Table of Authorities

**Page**

## Cases

*Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307 (4th Cir. 2017) ................. 39, 42

*Hicks v. Ferreyra*, 965 F.3d 302 (4th Cir. 2020) .............................................. 39, 42

*Johnson v. United States*, 576 U.S. 591 (2015) .......................................................40

*Rita v. United States*, 551 U.S. 338 (2007) ....................................................... 52, 53

*United States v. Alamoudi*, 452 F.3d 310 (4th Cir. 2006) ......................................16

*United States v. Arbizu*, 431 F.3d 469 (5th Cir. 2005) ...........................................36

*United States v. Bautista-Gunter*, 22 F.4th 506 (5th Cir. 2022) ............................38

*United States v. Bell*, 81 F. Supp. 3d 1301 (M.D. Fla. 2015) .................................57

*United States v. Boone*, 801 F. App'x 897 (4th Cir. 2020).....................................26

*United States v. Boulware*, 604 F.3d 832 (4th Cir. 2010) .......................................56

*United States v. Browder*, 866 F.3d 504 (2d Cir. 2017) .........................................46

*United States v. Cohen*, 63 F.4th 250 (4th Cir. 2023) ............................... 23, 49, 53

*United States v. Comer*, 5 F.4th 535 (4th Cir. 2021) ...................................... passim

*United States v. Cordero*, 7 F.4th 1058 (11th Cir. 2021) .......................................38

*United States v. Crudup*, 461 F.3d 433 (4th Cir. 2006)..........................................52

*United States v. Dempsey*, 180 F.3d 1325 (11th Cir. 1999) ...................................24

*United States v. Doctor*, 958 F.3d 226 (4th Cir. 2020)..........................................23

*United States v. Douglas*, 850 F.3d 660 (4th Cir. 2017) ........................................47

*United States v. Ellis*, 984 F.3d 1092 (4th Cir. 2021)............................................45

*United States v. English*, 400 F.3d 273 (5th Cir. 2005)..........................................49

*United States v. Fellows*, 157 F.3d 1197 (9th Cir. 1998) .......................................27

*United States v. Fleck*, 833 F. App'x 976 (4th Cir. 2020).......................................36

*United States v. Furukawa*, 596 F.2d 921 (9th Cir. 1979).....................................30

*United States v. Gibbs*, 897 F.3d 199 (4th Cir. 2018) ...................................... 52, 56

*United States v. Hamilton*, 986 F.3d 413 (4th Cir. 2021)............................ 26, 30, 43

iv

*United States v. Helton*, 782 F.3d 148 (4th Cir. 2015) .............................. 52, 53, 56

*United States v. Holena*, 906 F.3d 288 (3d Cir. 2018) ............................................45

*United States v. Johnson*, 138 F.3d 115 (4th Cir. 1998)................................... 23, 26

*United States v. Johnson*, 48 F.3d 806 (4th Cir. 1995)............................................29

*United States v. Lawrence*, 300 F.3d 1126 (9th Cir. 2002) ....................................24

*United States v. Lindh*, 227 F. Supp. 2d 565 (E.D. Va. 2002)................................13

*United States v. Lynn*, 592 F.3d 572 (4th Cir. 2010) ............................................56

*United States v. Malone*, 846 F. App'x 355 (6th Cir. 2021) ..................................49

*United States v. Miller*, 77 F.3d 71 (4th Cir. 1996) ..............................................27

*United States v. Montes-Pineda*, 445 F.3d 375 (4th Cir. 2006) ...................... 53, 54

*United States v. Nonahal*, 338 F.3d 668 (7th Cir. 2003) .......................................38

*United States v. Norris*, 62 F.4th 441 (8th Cir. 2023) ..................................... 37, 38

*United States v. Rakhmatov*, No. 21-151(L), 21-167 (Con), 2022 WL
     16984536 (2d Cir. Nov. 17, 2022) ................................................................55

*United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020)...........................................37

*United States v. Romero*, 676 F.2d 406 (9th Cir. 1982) .........................................35

*United States v. Saleh*, No. 21-2955, 2023 WL 2530742 (2d Cir. Mar.
     16, 2023) .......................................................................................................57

*United States v. Sales*, 476 F.3d 732 (9th Cir. 2007)..............................................45

*United States v. Sanchez*, 891 F.3d 535 (4th Cir. 2018)............................ 23, 24, 26

*United States v. Shiraz*, 784 F. App'x 141 (4th Cir. 2019)....................... 29, 45, 46

*United States v. Slappy*, 872 F.3d 202 (4th Cir. 2017) ..........................................56

*United States v. Tounisi*, 900 F.3d 982 (7th Cir. 2018) ..........................................57

*United States v. Under Seal*, 853 F.3d 706 (4th Cir. 2017)....................................35

*United States v. Van Donk*, 961 F.3d 314 (4th Cir. 2020).............................. passim

*United States v. Vandergrift*, 754 F.3d 1303 (11th Cir. 2014) ...............................49

*United States v. Webb*, 738 F.3d 638 (4th Cir. 2013).............................................52

*United States v. Whitley*, 841 F. App'x 631 (4th Cir. 2021)...................................24

*United States v. Williams*, 5 F.4th 500 (4th Cir. 2021).........................................55

*United States v. Williams*, 691 F. App'x 758 (4th Cir. 2017) ..................................36

*United States v. Wroblewski*, 781 F. App'x 158 (4th Cir. 2019)............................45

**Statutes**

18 U.S.C. § 2332b(g)(5)(B)(i) ....................................................57

18 U.S.C. § 2339B ..............................................................5

18 U.S.C. § 3006A ............................................................36

18 U.S.C. § 3006A(a)(1)........................................................38

18 U.S.C. § 3006A(a)(1)(E)....................................................38

18 U.S.C. § 3553(a) .......................................................17, 46

18 U.S.C. § 3553(a)(1).........................................................51

18 U.S.C. § 3553(a)(2)(B)-(C) ...............................................51

18 U.S.C. § 3583(d) ......................................................passim

18 U.S.C. § 3583(d)(1)..................................................44, 47, 48

18 U.S.C. § 3583(d)(2)........................................................44

18 U.S.C. § 3583(e) ..........................................................51

18 U.S.C. § 3583(e)(3)........................................................50

18 U.S.C. § 3583(f) .......................................................35, 36

18 U.S.C. § 3583(j)...........................................................57

18 U.S.C. § 3603(1) .......................................................36, 41

**Other Authorities**

U.S.S.G. § 5D1.2(b)(1) .......................................................57

U.S.S.G. § 7B1.1 ............................................................19

U.S.S.G. § 7B1.1(b) .........................................................51

U.S.S.G. § 7B1.4 ............................................................51

U.S.S.G. § 7B1.4(a) ......................................................19, 20

**Rules**

Federal Rule of Criminal Procedure 32.1 ......................................24, 36

Federal Rule of Criminal Procedure 32.1(c)(1)........................................................37

Federal Rule of Criminal Procedure 52(a)............................................................49

**Introduction**

Eight years ago, Ali Shukri Amin pleaded guilty to conspiring to provide material support and resources to a foreign terrorist organization, the Islamic State of Iraq and Syria (ISIS). He used the internet to provide technical guidance to others on how to support ISIS and conceal their online activity while doing so. He also facilitated an 18-year-old in traveling from Virginia to Syria to join and fight with ISIS. The district court imposed a below-guidelines sentence, followed by a lifetime term of supervised release. Amin's conditions of release prohibited him from associating with convicted felons without the permission of his probation officer and required screening and monitoring of his internet use as directed by his probation officer. After obtaining a sentence reduction, Amin was released from custody and began his term of supervised release in May 2020—just over five years after his arrest.

Despite the sentencing breaks that he received, Amin betrayed the trust that the district court afforded him. Amin violated the conditions of his supervised release by associating with John Walker Lindh (whom Amin referred to as the "American Taliban") and two other felons who had been convicted of terrorism or other similarly serious offenses. Amin also defied his probation officer's internet-monitoring instructions by, among other things, using a special operating system on his computer to circumvent the monitoring software and conceal his online

1

conversations with known extremists. In January 2023, Amin was arrested for these violations.

At the time of Amin's arrest, the Federal Bureau of Investigation (FBI) executed a search warrant on his apartment. There, the FBI recovered ISIS propaganda materials, including videos depicting beheadings and calling for lone wolf attacks, and evidence showing that Amin had been disseminating ISIS propaganda online. Amin was returning to the same type of conduct that led to his original conviction.

At a revocation hearing, the district court found that Amin violated the conditions of his supervised release. The court imposed a guidelines sentence of one year of imprisonment and reimposed a lifetime term of supervised release with the same conditions as before. On appeal, Amin challenges the validity of the probation officer's internet-monitoring instructions as bases for finding him in violation and the reimposition of a lifetime term of supervised release.

The Court should reject Amin's arguments challenging the probation officer's internet-monitoring instructions. Amin does not dispute that he violated the instructions or the factual allegations supporting the violations. Instead, he seeks to avoid responsibility for his conduct by challenging the legal propriety of the instructions. His arguments are not only substantively meritless, but also untimely. Amin should have raised these arguments to this Court when the district

2

court approved the probation officer's instructions in July 2020, not in revocation proceedings after he violated them.

Further, any error did not affect the outcome of the revocation proceedings. Amin concedes that he violated the terms of his supervised release by associating with Lindh and the two other felons who had been convicted of terrorism or other similarly serious offenses. This violation alone justified revocation of his supervised release and the district court's sentence. Any error in also finding Amin in violation for failing to follow the probation officer's instructions is harmless.

Finally, contrary to Amin's argument, there is no mystery as to the basis for the district court's decision to reimpose a lifetime term of supervised release. The court stated that the nature of Amin's violations justified its sentence. While the explanation was brief, it was sufficient under the circumstances.

## Issues Presented

1.      Can Amin challenge the probation officer's instructions in a revocation proceeding when the district court previously overruled his objections to the instructions and Amin failed to appeal the court's ruling but instead knowingly violated the instructions?

**2.**      Did the district court err in holding that the probation officer's instructions properly applied the court-ordered condition that subjected Amin to screening and monitoring of internet use as directed by the probation officer?

**3.**      Did the district court err in declining to hold that the probation officer's instructions implementing the internet monitoring and screening were unconstitutionally vague?

**4.**      Did the probation officer's instructions implementing the internet monitoring and screening satisfy 18 U.S.C. § 3583(d)?

**5.**      Was any error by the district court in holding that Amin violated his supervised release by failing to follow the probation officer's instructions harmless when Amin concedes that he violated another similarly serious condition of his release?

**6.**      Was it plainly unreasonable for the district court to reimpose a lifetime term of supervised release based on the nature of Amin's violations?

**Statement of the Case**

**A.      Amin's Underlying Criminal Offense**

*1.      Amin's Guilty Plea*

In June 2015, Amin, who was 17 years old at the time, pleaded guilty to conspiring to provide material support and resources to a foreign terrorist organization, namely, the Islamic State in Iraq and the Levant (ISIL), in violation

4

of 18 U.S.C. § 2339B.  JA11-12.  ISIL is now known, and will be referred to herein, as ISIS.  JA160.

Amin used the internet extensively to commit the offense.  Specifically, Amin used his Twitter account as a pro-ISIS platform and to provide guidance on how to support ISIS.  JA26.  Amin, for example, guided others over Twitter on how to support ISIS financially, such as by using Bitcoin.  JA26-27.  Amin also operated a page on the website ask.fm and "used these accounts extensively as a platform to proselytize his radical Islamic ideology, justify and defend [ISIS's] violent practices, and to provide advice on topics such as jihadists['] travel to fight with [ISIS], online security measures, and about how to use Bitcoin to finance themselves without creating evidence of crime."  JA27-28.  And he ran a pro-ISIS blog with "highly-technical articles" that he wrote for "aspiring jihadists and [ISIS] supporters."  JA28.  In those articles, Amin "detail[ed] the use of security measures in online communications to include use of encryption and anonymity software, tools and techniques, as well as the use of the virtual currency Bitcoin as a means to anonymously fund [ISIS]."  JA28.

In addition, Amin assisted another individual, RN, in traveling from Virginia to Syria to join ISIS.  JA28-29.  Beginning in September 2014, Amin began an effort to radicalize RN, who was 18 years old.  JA28.  Amin put RN in touch with ISIS supporters outside of the United States to facilitate RN's travel to Syria to join

and fight with ISIS. JA28. In January 2015, Amin and another co-conspirator drove RN to Washington Dulles International Airport for a flight to Turkey. JA29. Amin told RN where to go when he arrived in Turkey to meet ISIS supporters and travel to Syria. JA29. On January 16, 2015, an overseas ISIS supporter informed Amin that RN had successfully crossed over into Syria. JA29. Information obtained since Amin's plea suggests that RN was likely killed near the Syria-Turkey border sometime in January 2016. JA121.

### 2. *Amin's Sentencing*

At his sentencing hearing in August 2015, Amin's attorneys emphasized the role that the internet played in radicalizing Amin and leading him to commit the offense. *See* JA39, JA46.

The district court sentenced Amin to a term of imprisonment of 136 months. JA55, JA59. This sentence was a downward departure from Amin's guidelines range, which recommended a term of imprisonment of 180 months. JA163, JA329. The court also imposed a lifetime term of supervised release, with the following relevant conditions:

- Standard Condition 3 required that Amin "follow the instructions of the probation officer." JA60.

- Standard Condition 9 required that Amin "not associate with any person convicted of a felony, unless granted permission to do so by the probation officer." JA60.

- Special Condition 2 required that Amin "be subject to any screening or

6

monitoring of internet use, as directed by the probation officer."  JA61
(the "Internet Screening/Monitoring Condition").

In explaining its sentence, the court emphasized Amin's "actions in this offense,"
his age, and his "lack of . . . any prior criminal record."  JA55.  Amin did not
appeal, contest, or seek clarification of the sentence.

Almost three years later, in April 2018, the district court granted the
government's motion for a reduction of Amin's sentence pursuant to Federal Rule
of Criminal Procedure 35(b).  JA64.  The court reduced Amin's sentence to 72
months of imprisonment but did not alter Amin's supervised release.  JA64.

### B.    Amin's Start of Supervised Release

#### 1.    *Amin's Release from Custody and Start of Internet Monitoring*

On May 4, 2020, Amin was released from custody and began his term of
supervised release.  JA157.  At his probation officer's direction, Amin enrolled in a
computer-monitoring program called "RemoteCOM."  JA157.

Three days after his release, Amin and the probation officer signed the
"ED/VA Computer Monitoring Program Participant Agreement."  JA299-300.  In
it, Amin agreed that he would "not use any computer systems that have not been
authorized by the Court or probation officer."  JA299.  Amin further agreed to
various requirements to prevent him from circumventing the monitoring, including
that he would "not change, re-install, or upgrade the current operating system on

7

any authorized computer without pre-approval and authorization by the Court or

probation officer."  JA300.  The agreement specified the authorized computer

system as "Windows 10."  JA300.

Amin also completed forms to register two computers with the Probation

Office.  JA302-313.  The forms required Amin to provide the "name and version of

the operating system(s) (MAC, Windows, Linux, etc.)."  JA303, JA306.  Amin

listed only that the computers used a Windows 10 operating system.  JA303,

JA305-306, JA308.  The forms also directed Amin to "[p]rovide the names of any

software you possess that permits instant message, Internet Relay communication,

or similar method of real time communication."  JA305, JA308.  Amin registered

only that he used Skype, Microsoft Messaging, and Zoom.  JA305, JA308.

### 2.    *Proceedings Related to the Proposed Internet Requirements*

On June 12, 2020, the district court held a hearing to address the U.S.

Probation Office's request to modify the conditions of Amin's supervised release.[1]

Specifically, the Probation Office sought to add the following requirements (the

"Internet Requirements"):

> **Computer/Internet  Requirements/Monitoring:**  You  shall  not
> possess or use a computer or have access to any online service without
> the approval of the U.S. Probation and Pretrial Services Office.  Your

---

[1] The request was filed prior to Amin's release from custody, but the district
court continued the original hearing until after Amin's release to allow him to
attend.  JA65.

cooperation shall include, but not be limited to, allowing installation of a computer and internet monitoring program and/or identifying computer system, internet-capable devices, and similar memory and electronic devices to which you have access. Monitoring may include random examinations of computer systems along with internet, electronic, and media storage devices under your control. The computer system or devices may be removed for a more thorough examination, if necessary. You shall contribute to the cost of such monitoring services, based on your ability to pay, as deemed appropriate by the U.S. Probation Office.

You shall not access Internet Relay Chats or newsgroups or participate in any online social environment (i.e., Facebook, Twitter, Second Life, Linkedin, Craigslist, FaceTime, WhatsApp, Instagram, video/audio, etc.) or texting applications, which allow the user interaction unless pre-approved and authorized by the probation officer and the Court.

**Online Communications Restrictions:** Your written online communications, if any, shall be conducted in the English language, unless you receive the approval of the supervising probation officer and/or the Court.

During the term of supervision, the defendant shall not possess or utilize any video gaming system, console, or other such device which would enable contact and/or the sharing of data with other individuals known or unknown to the defendant, unless approved by the Probation Office.

**No Extremist/Terroristic Materials:** You shall not possess, view, access, or otherwise use material that reflects extremist or terroristic views or is deemed to be inappropriate by the U.S. Probation Office.

**No Communication with Known Extremist:** You shall have no contact with any known Extremist or anyone suspected in any known Extremist activity.

JA122, JA157.

At the hearing, Amin, who appeared pro se, stated that "it would probably be best" to have an attorney represent him and stated that he had a motion requesting counsel. JA68. The district court responded that it did not "understand why [he] need[ed] an attorney" and asked if the probation officer's request presented a problem. JA69. Amin argued that, while he was already subject to computer monitoring, he believed the Internet Requirements would broaden the monitoring, for example, by forbidding him from meeting with certain individuals. JA69-70. After Amin said he wanted an attorney or at least a continuance, the court continued the matter, JA70, and rescheduled it for July 24, 2020, JA5.

In advance of the July 2020 hearing, Amin filed pro se objections to the Internet Requirements and a memorandum in support. JA72-118. The government, meanwhile, moved for the district court to modify Amin's conditions of release to add the Internet Requirements. JA119-130. For the "No Communication with Known Extremist" requirement, the government suggested the following language to avoid vagueness concerns: "You shall have no contact with any individual you have reason to believe supports the use of illegal violence to coerce or intimidate people or governments." JA122.

At the July 2020 hearing, the district court declined to add the Internet Requirements as special conditions, ruling that the Internet Screening/Monitoring Condition already covered them. JA146, JA153. The court explained that the

10

Internet Screening/Monitoring Condition left it to the probation officer to specify the means by which the monitoring or screening would be effectuated. JA147. As the court explained, the conditions were "not being changed" because "the probation officer can determine what these reasonable conditions are to monitor somebody's computer" without the court having to specify each aspect of the monitoring. JA150. The court stated that the Internet Requirements "seem[ed] perfectly reasonable." JA148.

The district court explained to Amin the purpose of the internet monitoring in straightforward terms. JA147-148. The court told Amin, "[T]he reason you have a probation officer supervising . . . is to check and see that you don't get back into the same activity you were in before." JA148. As the court explained, "depending on what crime you have been convicted of and what kind of conduct you did before, your conditions of supervised release [are] tailored so that the probation officer can check and see that you are complying." JA148. Observing that Amin's conviction concerned his involvement with terrorist organizations, the court stated that it made "just plain common sense that once you're on supervised release, that part of your computer monitoring is that you don't talk with those people again, you don't possess that material, and you don't deal in those things." JA147-148. The court stated that the Internet Requirements were "perfectly reasonable considering the nature of the offense and the activity [Amin was]

11

involved in." JA151. The court told Amin that he had "to subject [him]self to the monitoring" of the Probation Office, JA150, and comply with the probation officer's instructions, JA153.

After the hearing, the probation officer instructed Amin to comply with the Internet Requirements. JA158. Amin did not appeal or otherwise seek relief after the July 2020 hearing.

### 3.    *Amin's Computer Classes While on Supervised Release*

As demonstrated by Amin's offense conduct, he was already a sophisticated computer user prior to his supervised release. While on supervised release, Amin completed courses that further advanced his computer abilities, including courses on computer coding, blockchain, cloud management, and, of particular significance here, Linux+. JA205-222.

### C.    **Amin's Violations of Supervised Release**

### 1.    *Petition Alleging Violations of Supervised Release*

On January 9, 2023, the district court issued a Petition on Supervised Release (Petition) and warrant for Amin's arrest based on his violation of the terms of his supervised release. JA156-159. The Petition alleged that Amin committed four violations.

***Association with a known felon.*** The Petition alleged that Amin violated Standard Condition 9 by associating with a person convicted of a felony without

12

the probation officer's permission.  JA158.  Specifically, the Petition described how the FBI had photographed Amin with John Walker Lindh on three occasions in 2021.  JA158.  Each meeting lasted two to three hours.  JA284.  Lindh had previously been convicted of felony offenses involving his supplying of services to the Taliban and carrying an explosive during the commission of a felony.  JA158; *United States v. Lindh*, 227 F. Supp. 2d 565 (E.D. Va. 2002).  Amin knew that Lindh was a convicted felon, referring to him in communications as the "American Taliban."  JA250, JA284, JA333.

*Contact with known extremists.*  The Petition also alleged that Amin violated Standard Condition 3 by failing to follow the probation officer's instruction forbidding him from having contact with known extremists (one of the Internet Requirements).  JA158.  The Petition alleged that Amin violated this condition by having contact with Lindh and frequent correspondence with a known extremist who had been arrested by U.K. authorities.  JA158.

*Use of unmonitored device.*  The Petition further alleged that Amin violated Standard Condition 3 by failing to follow the probation officer's instruction forbidding him from using an unmonitored device (one of the Internet Requirements).  JA159.  The FBI had provided the probation officer with information showing that Amin was "utilizing a Linux operating system (OS), which cannot be monitored by RemoteCOM, to correspond with known extremist

13

and discuss extremist views." JA159. "The Linux OS . . . was never approved by the probation officer." JA159. As the probation officer noted, "Amin ha[d] undergone efforts to conceal his ongoing online communications by utilizing various methods like using the Linux OS, deleting chat messages and using a Virtual Private Network (VPN)." JA159.

***Possessing, viewing, and accessing material that reflects extremist or terroristic views.*** Finally, the Petition alleged that Amin violated Standard Condition 3 by failing to follow the probation officer's instruction that he not possess, view, access, or otherwise use material that reflects extremist or terroristic views (one of the Internet Requirements). JA159. Specifically, the probation officer had received evidence that, when corresponding with other individuals, Amin had "reviewed, interpreted and provided guidance on the teachings of" two individuals who are "known by the FBI to have extremist teachings and profess terroristic activities." JA159.

### 2. *Arrest of Amin and Search of Apartment*

On January 11, 2023, Amin was arrested in connection with the Petition. JA6. At the same time, the FBI executed a search warrant on Amin's apartment. JA170. The FBI recovered, among other things, an external hard drive that contained ISIS propaganda magazines and videos, including videos that depicted ISIS members beheading prisoners and instructions to carry out lone wolf attacks.

14

JA169.  The FBI also seized the computer with the Linux OS.  JA238.

In searching the Linux OS, the FBI recovered communications between Amin and Lindh over an encrypted chat platform from early 2023, demonstrating that their association extended beyond the three in-person meetings described in the Petition.  JA250, JA334-338.  The FBI also recovered communications between Amin and other convicted felons.  JA245.  In addition, the FBI seized communications in which Amin shared his technical expertise, advice on evading surveillance, and ISIS propaganda.  JA251-254.

While the FBI recovered some anti-ISIS literature during the search of his apartment, the evidence showed that Amin remained a supporter of ISIS and violent jihad.  JA252-253.  For example, the FBI recovered evidence showing that Amin posted ISIS propaganda to his Telegram channel, JA253, JA287-288, JA376-377, and attempted to send an ISIS propaganda video to another individual over the encrypted chat platform Signal, JA253-254, JA288.  Immediately before attempting to send the ISIS video, Amin changed a setting so that the message would automatically delete after eight hours.  JA254, JA379-381.

### 3.   *Addendum to Petition*

On March 27, 2023, the district court signed an Addendum to the Petition on Supervised Release (Addendum), which added further allegations based on evidence obtained by the FBI.  JA245-246.  Of note, Amin has admitted (at 6) to

15

the "factual allegations in the Petition and Addendum."

***Association with a known felon.***  Based on evidence from the FBI's forensic analysis of Amin's computer, the Addendum alleged that Amin violated Standard Condition 9 by associating with two convicted felons with whom he had previously been incarcerated—Aldurahman Alamoudi and Zubair Ahmed—without the probation officer's permission.  JA245.

Alamoudi had been convicted of various felonies, including prohibited financial transactions with Libya.  JA245.  Part of his unlawful conduct involved "conspiring with the Libyan government and dissidents of Saudi Arabia to assassinate Saudi Crown Prince Abdullah." *United States v. Alamoudi*, 452 F.3d 310, 312 (4th Cir. 2006); *see also* JA285.  The evidence showed that Amin and Alamoudi communicated regularly over Signal between May 2020 (right after Amin was released from custody) and January 10, 2023 (the day before Amin was arrested).  JA246.  In other words, Amin started violating his conditions of release almost immediately after his release from custody.

Meanwhile, Ahmed had previously been convicted of providing material support to terrorists.  JA246, JA285.  Amin communicated with Ahmed over the encrypted chat platforms Signal, Telegram, and WhatsApp.  JA246.

***Using unauthorized encrypted communication platforms.***  The Addendum also alleged that Amin violated Standard Condition 3 by failing to follow the

16

probation officer's instruction forbidding him from using Internet Relay Chats or participating in any online social environment or texting applications, unless preapproved and authorized by the probation officer and the court. JA157, JA246. Amin had used Signal, Telegram, and WhatsApp without the probation officer's approval, including to communicate with the known felons. JA246.

***Online communications using language other than English.*** The Addendum further alleged that Amin violated Standard Condition 3 by failing to follow the probation officer's instruction that he conduct his written online communications in English unless he received the approval of the probation officer and/or the court. JA157, JA247. Amin had been corresponding in a language other than English when speaking to individuals online. JA247.

### D.     Revocation Hearing

Prior to the revocation hearing, the government informed the district court that it would not seek to hold Amin in violation based on his contact with extremists or for possessing, viewing, and accessing material that reflected extremist or terroristic views. JA170. The government encouraged the court simply to consider that conduct when determining the appropriate sanction under 18 U.S.C. § 3553(a). JA170.

At the revocation hearing, Amin's counsel acknowledged that "the government is not proceeding on any allegations related to extremism or extremist

material." JA259. His counsel then represented that "Amin admits to violating condition number nine, which is associating with a convicted felon." JA259. On appeal, Amin concedes (at 10) that it is "undisputed" that he violated his conditions of release by associating with convicted felons.

Amin also admitted to the alleged conduct underlying the other violations at issue (i.e., that he used the unmonitored Linux OS, wrote online in a language other than English, and used unapproved internet chat platforms). JA259. But Amin argued that this conduct did not violate the conditions of his release. According to Amin, the Internet Requirements were "completely new restrictions on . . . Amin's liberty" that had to be imposed as special conditions of release and were not proper instructions under the existing Internet Screening/Monitoring Condition. JA260-261. Based on this reasoning, Amin's counsel argued that he could not be held in violation of those restrictions because they were "never a condition of his supervision." JA259-260.

The district court rejected this argument. JA265, JA272. Through questioning, the court recognized that "all of these instructions that [Amin] was given ha[d] to do with Internet monitoring." JA265. Amin's counsel tried to distinguish between internet monitoring and computer monitoring, arguing that the conditions of release allowed only the former but the instructions implemented the latter. JA265. The court, however, noted that the computer monitoring allowed

18

the probation officer to "check what Internet use he's had." JA265. The court asked the commonsense question about how the Probation Office was "going to find out what Internet use he's had unless they check his computer." JA265. The court ultimately rejected Amin's arguments, finding that the terms of supervised release and the probation officer's instructions were "perfectly proper." JA272.

The court found Amin "in violation of the terms and conditions of [his] supervised release." JA294. The court sentenced Amin to 12 months of imprisonment and a "lifetime period of supervised release under the same terms and conditions." JA294. After the court announced the sentence, Amin's counsel requested a sentence of 12 months and 1 day. JA294. The court denied the request, explaining that "the nature of these violations warrant what [the court had] done in this case." JA294-295. Amin did not otherwise object to or seek clarification of the sentence.

The court's sentence fell within the applicable guidelines range. Both parties agreed that Amin's supervised-release violations were Grade C violations under § 7B1.1 of the Sentencing Guidelines. JA172, JA199. The applicable "criminal history category is the category determined at the time the defendant originally was sentenced to a term of supervision," U.S.S.G. § 7B1.4(a) & cmt. 1, and "is not to be recalculated," *id.* cmt. 1. Amin was a criminal history category VI when he was sentenced, JA172, JA199, which he had agreed to in his

19

underlying plea agreement, JA14-15. Where a defendant has a criminal history

category of VI and commits a Grade C violation, the Sentencing Guidelines

suggest a term of imprisonment between 8 and 14 months. *See* U.S.S.G.

§ 7B1.4(a). The district court's 12-month sentence was in the middle of that range.

On April 11, 2023, Amin filed a timely notice of appeal. JA315.

## Summary of Argument

**1.**  Amin's challenges to the probation officer's instructions are untimely.

As a general rule, a defendant should not be allowed to challenge a probation

officer's instructions in a revocation proceeding (unless he raises an as-applied

challenge to the instructions, which Amin does not bring here). If a defendant

seeks to challenge a probation officer's instructions, he should seek relief from the

district court when they are given and then appeal any adverse ruling. Here, Amin

could have raised his current challenges to the probation officer's instructions in an

appeal after the district court approved the instructions at the July 2020 hearing.

Instead, Amin simply violated them for years until he was arrested.

**2.**  The probation officer's instructions properly applied the Internet

Screening/Monitoring Condition. Consistent with this Court's precedent, the

court-ordered condition allowed the probation officer to determine the means and

details of implementing the internet monitoring and screening. The probation

officer's instructions were reasonable means of implementing the monitoring and

screening.  Because the district court did not add the instructions as conditions of release, the procedural requirements for adding or modifying conditions of release did not apply.

**3.**    The probation officer's instructions at issue on this appeal are not unconstitutionally vague.  Much of Amin's argument focuses on the instructions related to contact with extremists and possessing extremist materials, but those instructions were not at issue in the revocation hearing and therefore are not at issue on appeal.  For the instructions at issue, the scienter requirement that Amin knowingly violate the instructions, and his ability to seek clarification from the probation officer or district court about the instructions, mitigate against any vagueness concerns.

**4.**    The probation officer's instructions implementing the Internet Screening/Monitoring Condition satisfy the requirements in 18 U.S.C. § 3583(d). Amin's conduct underlying his terrorism offense involved an extensive use of the internet, and he demonstrated an ability and proclivity to take sophisticated technical measures to conceal online activity.  Under these circumstances, the probation officer's measures were reasonably related and appropriately tailored to the factors in § 3583(d).  Because the instructions were proper under § 3583(d), they do not present First Amendment concerns.

21

5.     Any error by the district court in holding Amin in violation for failing to follow the probation officer's instructions is harmless.  It is undisputed that Amin violated the conditions of release by associating with known felons.  This violation alone warranted revocation of his supervised release.  Amin's sentencing exposure was the same whether he had been found to commit the one violation of associating with known felons or all of the alleged violations.  And the district court would have considered Amin's conduct in circumventing the probation officer's instructions when determining the appropriate sanction, even if it had not treated the conduct as a violation of his conditions of release.  The outcome of the proceedings therefore would have been the same.

6.     The district court's reimposition of a lifetime term of supervised release was reasonable.  Even if brief, the court's explanation—that the nature of the violations warranted its sentence—was sufficient under the circumstances.  The concern with the nature of the violations was obvious: Amin's violations showed that he was falling back into the conduct that led to his material-support conviction and that he posed a high risk of recidivism.  The district court, moreover, was imposing the same term and conditions of supervised release that had been in place previously.  There was no reason for the court to reduce the term of Amin's supervised release.

Accordingly, this Court should affirm the judgment.

22

**Argument**

This Court reviews a district court's decision to revoke a defendant's supervised release for abuse of discretion.  *United States v. Doctor*, 958 F.3d 226, 234 (4th Cir. 2020).  It reviews "the factual findings underlying a revocation for clear error."  *Id.*  A district court abuses its discretion if it commits a legal error. *United States v. Cohen*, 63 F.4th 250, 254 (4th Cir. 2023).

## I.    Amin Cannot Challenge the Probation Officer's Instructions in a Revocation Proceeding.

Except for his challenge to the length of his supervised release, Amin's arguments on appeal attack the validity of the probation officer's instructions concerning the Internet Requirements.  Because he could have raised these arguments years ago, he could not properly raise his challenge at the revocation hearing, as the government argued below.  JA227-228.

It is well established that "a defendant may not challenge the special conditions of his original term of supervised release during later revocation proceedings."  *United States v. Sanchez*, 891 F.3d 535, 539 (4th Cir. 2018).  In *United States v. Johnson*, for example, this Court declined to review the defendant's challenge to a special condition of release in an appeal of a revocation order when the defendant failed to "raise his objections [to the conditions] in a timely appeal of that initial sentence."  138 F.3d 115, 118 (4th Cir. 1998).  While a defendant "may bring an as-applied challenge in revocation proceedings," *United*

23

*States v. Van Donk*, 961 F.3d 314, 325-26 (4th Cir. 2020), he cannot bring

challenges that were available when the conditions were imposed, *see United*

*States v. Whitley*, 841 F. App'x 631, 631-32 (4th Cir. 2021).

The same rule should apply to challenging a probation officer's instructions

implementing a court-ordered condition.  If a defendant disagrees with an

instruction, he has "the right to apply to the sentencing court for a

clarification . . . of conditions."  Fed. R. Crim. P. 32.1 advisory committee's notes

to 1979 addition.  This avenue allows "the probationer . . . to obtain resolution of a

dispute over an ambiguous term or the meaning of a condition without first having

to violate it."  *Id.*  A defendant may appeal a decision denying relief on a motion

for clarification.  *See United States v. Lawrence*, 300 F.3d 1126, 1129 (9th Cir.

2002); *United States v. Dempsey*, 180 F.3d 1325, 1325-26 (11th Cir. 1999).  But to

allow a defendant to wait to challenge an instruction at a revocation hearing would

result in a waste of resources and confer procedural advantages on defendants who

knowingly violate their probation officers' instructions.  *See Sanchez*, 891 F.3d at

539-40.

Amin's current arguments are the type that could have been raised when the

probation officer gave the instructions three years ago.  In fact, at the July 2020

hearing, Amin unsuccessfully objected to the Internet Requirements.  But after the

district court denied him relief and approved the instructions, he did not appeal or

24

otherwise seek relief from the court's ruling. Instead, Amin simply violated the instructions until he was arrested. Because Amin could have raised his challenges with this Court years ago, the arguments are untimely.

## II.    The Probation Officer's Instructions Properly Applied the Internet Screening/Monitoring Condition.

Amin argues (at 15-24) that the district court erred in imposing the Internet Requirements as conditions of release because it failed to follow the procedural requirements for adding conditions of release. But his argument rests on the false premise that the Internet Requirements were added as conditions of release. At the July 2020 hearing, the district court *declined* to add the Internet Requirements as conditions of release, ruling instead that the instructions were already authorized by and a reasonable means of effectuating the existing Internet Screening/Monitoring Condition.[2] As described below, this ruling was correct.

### A.    The Internet Screening/Monitoring Condition did not impermissibly delegate authority to the probation officer.

Amin suggests (at 19) that the Internet Screening/Monitoring Condition

---

[2] Amin emphasizes (at 16) that the government moved to add the Internet Requirements as conditions of release prior to the July 2020 hearing. But that fact does not call into question the correctness of the district court's ruling. In fact, at the July 2020 hearing, the government expressly agreed that the existing conditions covered the Internet Requirements and that it was unnecessary to add them as new conditions. JA151-152.

impermissibly delegated authority to the probation officer.[3]  This Court reviews constitutional nondelegation challenges de novo.  *United States v. Comer*, 5 F.4th 535, 547 (4th Cir. 2021).  In addition to being untimely, *see Sanchez*, 891 F.3d at 539-40; *Johnson*, 138 F.3d at 117-18, and barred by the appeal waiver in his plea agreement (JA15-16), *see United States v. Boone*, 801 F. App'x 897, 903-04 (4th Cir. 2020), Amin's challenge to the Internet Screening/Monitoring Condition has no substantive merit.

The law governing supervised release "vests substantial discretion in the district court for determining the length and conditions of supervision."  *United States v. Hamilton*, 986 F.3d 413, 417 (4th Cir. 2021).  At the same time, "[t]he defendant's assigned probation officer also has discretion and plays a significant role in the day-to-day management of supervised release."  *Id.*  As this Court has acknowledged, "the district court and the probation officer work together with substantial . . . discretion in the crafting and management of supervised release."  *Id.* at 418.

It is well established that a district court "may use nonjudicial officers, such as probation officers, to support judicial functions, as long as a judicial officer

---

[3] Amin argues (at 24-26) that the Internet Requirements improperly delegated authority to the probation officer, but again, the Internet Requirements were not conditions of release.  As instructions given by the probation officer, the Internet Requirements do not present delegation issues.

retains and exercises ultimate responsibility." *Comer*, 5 F.4th at 547 (quoting *United States v. Miller*, 77 F.3d 71, 77 (4th Cir. 1996)). Article III precludes a court from "delegat[ing] core judicial functions[,] such as the authority to decide the amount of a fine or restitution payment, or whether a defendant must attend a treatment program." *Id.* (quoting *Van Donk*, 961 F.3d at 327). Otherwise, the court may delegate to a probation officer the authority "to fashion the means or details" of a court-ordered condition. *Id.* "[A]s long as the court orders the broad principle guiding the condition of release and retains the ultimate authority over revoking release, the court may allow the probation officer to fill in many of the details necessary for applying the condition." *Id.*

Two precedential decisions from this Court are instructive here. **First**, in *United States v. Van Donk*, the Court rejected a delegation challenge to a supervised-release condition that required the defendant, who had been convicted of possessing child pornography, to "submit to sex-offender treatment and 'abide by all rules, requirements, and conditions imposed by the treatment provider until discharged from treatment by the provider.'" 961 F.3d at 318. The Court recognized that a district court "cannot be expected to design and implement the particularities of a treatment program." *Id.* at 327 (quoting *United States v. Fellows*, 157 F.3d 1197, 1204 (9th Cir. 1998)). Because "the district court retain[ed] ultimate responsibility over the core judicial function of deciding

whether [the defendant] ha[d] violated his conditions of supervised release," and

"the treatment provider [was] deciding only the means of court-ordered therapy,"

the Court held that the supervised-release condition did not amount to an

impermissible delegation. *Id.* at 327-28.

> **Second**, in *United States v. Comer*, the Court rejected a delegation challenge

to a condition "stating that [the defendant] was 'not [to] have any social

networking accounts without the approval of the U.S. Probation Officer.'" 5 F.4th

at 540. The Court emphasized that "[t]he district court established the principle

that [the defendant] could not maintain social networking accounts without

permission and . . . maintains the core judicial function of determining whether

[the defendant] violates her conditions of release." *Id.* at 547. The Court

explained that the probation officer could not punish the defendant but "merely

support[ed] the judicial function of imposing supervised release by determining if

she can maintain certain social networking accounts, a decision that itself is subject

to review by the district court." *Id.* at 547-48.

> The Internet Screening/Monitoring Condition is functionally the same as the

conditions that the Court upheld in *Van Donk* and *Comer*. Here, the district court

ordered that Amin's internet use be subject to screening and monitoring and left it

to the probation officer to determine the means and details of effectuating the

screening and monitoring. The court retained the ultimate authority to determine

whether Amin violated this condition and to review the instructions and decisions made by the probation officer.  In fact, the court reviewed the instructions at issue here and determined that they were "perfectly reasonable."  JA153.  Under this Court's precedent, the Internet Screening/Monitoring Condition did not involve an impermissible delegation.

Contrary to Amin's argument (at 19), this Court's decision in *United States v. Johnson*, 48 F.3d 806 (4th Cir. 1995), does not suggest otherwise.  In *Johnson*, this Court recognized that a district court cannot delegate "decisions about the amount of restitution, the amount of installments, and their timing" to the probation officer.  *Id.* at 809.  Federal statutes "clearly impose *on the court* the duty to fix terms of restitution."  *Id.* at 808.  Here, in contrast, no federal statute requires the district court to fashion the means and details of conducting internet monitoring for defendants on supervised release.  On the contrary, this Court has recognized that "district courts can allow probation officers to make internet-access determinations without violating Article III."  *Comer*, 5 F.4th at 548.

This Court's unpublished decision in *United States v. Shiraz*, 784 F. App'x 141 (4th Cir. 2019), likewise does not assist Amin.  There, the district court impermissibly delegated to the probation officer the decision of *whether* the defendant could operate a business at all.  *Id.* at 144.  Here, the district court decided that Amin would be subject to internet monitoring and simply left it to the

29

probation officer to determine the means and details of implementing the monitoring.

> **B.**    **The probation officer's instructions reasonably applied the Internet Screening/Monitoring Condition.**

Amin argues (at 16) that the probation officer's instructions fell outside the scope of the Internet Screening/Monitoring Condition. The district court and probation officer enjoy substantial discretion in crafting, managing, and applying the terms of supervised release. *Hamilton*, 986 F.3d at 418-19. Because the probation officer's instructions were a reasonable means of applying the Internet Screening/Monitoring Condition, Amin has failed to demonstrate an abuse of discretion. *See United States v. Furukawa*, 596 F.2d 921, 922-23 (9th Cir. 1979).

> **1.**    *The instruction requiring use of only monitored devices reasonably applied the Internet Screening/Monitoring Condition.*

The probation officer's instructions prevented Amin from using unmonitored devices. In the Internet Requirements, the probation officer informed Amin that he "shall not possess or use a computer or have access to any online service without the approval of the [Probation Office]" and that his "cooperation shall include . . . allowing installation of a computer and internet monitoring program." JA157. The ED/VA Computer Monitoring Program Participant Agreement set forth further details for the monitoring, such as instructions to prevent Amin from changing operating systems or taking other measures to defeat

the monitoring.  JA299-300.

Amin does not challenge the requirement that he use only monitored devices, and for good reason.  The requirement that Amin use only monitored devices was essential to effectuating the Internet Screening/Monitoring Condition. Without such a restriction, Amin could (and did) render the condition a nullity by using an unmonitored device.

Instead, Amin's complaint (at 17, 21-24) is that the probation officer's instructions—and the type of software used by the probation officer (RemoteCOM)—subjected him to computer monitoring, which exceeded the scope of the Internet Screening/Monitoring Condition.  But this argument fails for several reasons.

As the district court recognized at the revocation hearing, the probation officer's use of computer monitoring was a reasonable means of monitoring and screening Amin's internet use.  JA265.  Computers and other such devices are used to connect to the internet.  Even if the computer monitoring also captures a user's offline activities, that information can still shed light on internet activity (e.g., by revealing files that show internet use, such as downloaded files).  Given this commonsense reasoning, the use of computer monitoring to screen and monitor Amin's internet activity was an appropriate exercise of discretion.

The use of computer monitoring to monitor Amin's internet activity was

particularly reasonable in light of his individual characteristics. Amin is a sophisticated computer user with a history of trying to conceal online activity, as evidenced by his underlying offense conduct and the computer-related courses he took while on supervised release (including a course on Linux+). *See supra* pp. 5, 12. It was reasonable for the probation officer to include strict requirements and use intrusive software to screen and monitor his internet activity effectively. Even if computer monitoring is too intrusive for effectuating internet screening and monitoring in some circumstances, it was a reasonable means of doing so for this defendant.

The nature of this violation illustrates why. Amin complains (at 23) that the instructions on "the type of operating system [he] could use" were not related to internet monitoring or screening. But Amin defeated the monitoring of his *online* communications by using the Linux OS, a different operating system than the one he registered with the Probation Office. If anything, Amin's conduct proves that effective internet monitoring and screening can require instructions on general computer usage, especially when dealing with a savvy computer user like Amin.

Finally, Amin's arguments (at 23) about the scope of monitoring and type of software used in this case are beside the point. The district court did not revoke his supervised release based on his offline computer use. As alleged in the Petition, Amin used the unmonitored device "to correspond with known extremist and

discuss extremist views" and "conceal his ongoing online communications."

JA159.  The allegations about Amin's use of an unmonitored device related to his

unmonitored internet activity.

> ### 2. *The instruction requiring Amin to obtain approval to conduct online communications in languages other than English reasonably applied the Internet Screening/Monitoring Condition.*

Amin's arguments also fail in challenging (at 17) the instruction requiring

that his "written online communications, if any, shall be conducted in the English

language" unless he received approval.  JA157.  On its face, the instruction related

to Amin's *online* communications.  The instruction did not flatly ban Amin from

communicating in a foreign language; it just required the probation officer's

approval for doing so on the internet.  Without such an instruction, Amin could

frustrate the internet screening and monitoring by communicating in a language

that the monitors did not speak.  For this reason, the instruction was a reasonable

means of screening and monitoring Amin's internet use.

> ### 3. *The instruction requiring Amin to obtain approval to use internet chat applications reasonably applied the Internet Screening/Monitoring Condition.*

Likewise unpersuasive is Amin's challenge (at 18) to the instruction

requiring him to get approval to use internet chat applications.  This instruction, on

its face, applied to internet activity.  It makes sense that the probation officer

would want to know what chat applications Amin was using so that the officer

could ensure that they were appropriately monitored.

The facts of this case exemplify the reasonableness of this instruction to implement the Internet Screening/Monitoring Condition. Amin registered a number of chat platforms with the probation officer (Skype, Microsoft Messaging, and Zoom). JA305, JA308. But to carry out the pro-ISIS, pro-jihad communications of concern and communicate with convicted felons, Amin used encrypted chat platforms (Telegram, Signal, WhatsApp) that he did not receive the probation officer's approval to use.

> ### 4. *The instructions related to Amin's contact with extremists and possession of extremist materials are not at issue on appeal.*

Amin argues (at 17-18) that the instructions forbidding him from possessing extremist/terroristic materials and having contact with known extremists fell outside the scope of internet screening and monitoring. It is unclear from Amin's opening brief whether he is arguing that the Court should vacate his current violations based on those instructions or strike the instructions from his future term of supervised release. Either way, the Court should not reach the issue because it is not ripe.

To the extent Amin raises this issue to challenge the revocation of his supervised release, the issue is not before the Court. As Amin acknowledges (at 7), the government did not proceed on those allegations at the revocation hearing. As a result, those instructions were not a basis for the revocation of his supervised

34

release.

Further, this Court should not address whether those instructions—or any of the other instructions—would be appropriately applied when Amin begins his new term of supervised release. Amin is still in custody, and it is unknown whether the probation officer will give him the same instructions upon release. Without knowing the type or language of instructions that the probation officer will give, Amin is asking this Court to issue an impermissible advisory ruling. *See United States v. Under Seal*, 853 F.3d 706, 722 (4th Cir. 2017).

In any event, the district court's explanation at the July 2020 hearing shows that it intended for the instructions to apply to Amin's internet activity. *See* JA146-148. Given the nature of his underlying offense, screening Amin's online activities to preclude him from having contact with extremists and possessing extremist materials was "a reasonable measure for [his] rehabilitation and the protection of the public." *United States v. Romero*, 676 F.2d 406, 407 (9th Cir. 1982).

### C.     The district court did not need to follow the procedures for modifying conditions of release when it declined to add the Internet Requirements as conditions.

Amin argues (at 18-21) that the district court erred by failing to reduce the Internet Requirements to writing in accordance with 18 U.S.C. § 3583(f), failing to announce them orally, and failing to appoint him counsel at the July 2020 hearing

in accordance with Rule 32.1 and 18 U.S.C. § 3006A.  Each of these procedural

requirements, however, applies when the district court imposes or modifies

conditions of release.  Because the district court did not add to or modify Amin's

conditions, none of these procedural requirements applied.

*Written statement.*  Section 3583(f), by its terms, requires district courts to

direct probation officers to provide defendants with a "written statement that sets

forth all the *conditions* to which the term of supervised release is subject," but the

statute does not require the same for instructions given by the probation officer.  18

U.S.C. § 3583(f) (emphasis added); *see also id.* § 3603(1) (requiring a probation

officer to "provide . . . a written statement clearly setting forth all . . . *conditions*"

(emphasis added)).

That said, a defendant cannot have his supervised release revoked for an

inadvertent violation of a condition, *Comer*, 5 F.4th at 544, meaning that the

defendant must know of the probation officer's instructions before being punished

for violating them.[4]  Here, the record shows that Amin knew of the instructions and

even had them in writing from the outset.  *See* JA73-74, JA100, JA108, JA111,

---

[4] Even under § 3583(f), the failure to provide a written statement of conditions
does not warrant reversal of a revocation order if the defendant had actual notice of
the conditions.  *See, e.g.*, *United States v. Fleck*, 833 F. App'x 976, 978 (4th Cir.
2020); *United States v. Williams*, 691 F. App'x 758, 759 (4th Cir. 2017); *United
States v. Arbizu*, 431 F.3d 469, 470-71 (5th Cir. 2005).

JA113 (Amin's pro se objections quoting the instructions); JA122 (government quoting the instructions in its motion to modify the conditions of release); JA134 (Amin admitting he received the government's motion); JA158 (probation officer giving instructions to Amin after July 2020 hearing).

*Oral pronouncement.*  As this Court has held, the district court must orally pronounce the discretionary conditions of a defendant's supervised release at sentencing.  *United States v. Rogers*, 961 F.3d 291, 297 (4th Cir. 2020).  This requirement does not, should not, and (as a practical matter) could not extend to the probation officer's instructions implementing a court-imposed condition.

At Amin's sentencing, the district court orally announced that Amin would be subject to internet screening and monitoring by his probation officer.  JA55.  Because the Internet Requirements were not conditions of release, they did not need to be orally announced.

*Right to Counsel.*  Rule 32.1(c) addresses the process that a district court must afford a defendant before modifying his conditions of release.  It provides, in relevant part, that "[b]efore modifying the conditions of . . . supervised release, the court must hold a hearing, at which the person has the right to counsel."  Fed. R. Crim. P. 32.1(c)(1).  These procedural requirements do not apply where, as here, the district court denies a motion to modify conditions of release, *see United States v. Norris*, 62 F.4th 441, 447 (8th Cir. 2023); *United States v. Nonahal*, 338 F.3d

668, 671 (7th Cir. 2003), and orders the defendant to abide by existing conditions

of release, *see United States v. Bautista-Gunter*, 22 F.4th 506, 510 (5th Cir. 2022);

*United States v. Cordero*, 7 F.4th 1058, 1067 (11th Cir. 2021). As the Eighth

Circuit recently held, the right to counsel "applies *only* if a district court *modifies*

the conditions of supervised release." *Norris*, 62 F.4th at 447 (alterations omitted).

Section 3006A, in turn, requires that district courts implement a "plan for

furnishing representation for any person financially unable to obtain adequate

representation in accordance with this section." 18 U.S.C. § 3006A(a)(1). Among

other circumstances, the plan must provide "[r]epresentation . . . for any financially

eligible person who . . . is charged with a violation of supervised release or faces

modification, reduction, or enlargement of a condition, or extension or revocation

of a term of supervised release." § 3006A(a)(1)(E).

Because the district court declined to modify, reduce, or enlarge Amin's

conditions of release, the right to counsel did not attach.

## III. The Probation Officer's Instructions that Amin Violated Were Not Unconstitutionally Vague.

Amin makes two arguments (at 27-30) that the probation officer's

instructions were unconstitutionally vague.[5] The Court reviews vagueness

---

[5] Although Amin states (at 27, 36) that all the "requested special conditions" are unconstitutionally vague, he fails to argue why the other instructions he violated—the requirements regarding use of chat applications and communicating online in English—were unconstitutionally vague. As a result, he has waived

challenges de novo.  *Comer*, 5 F.4th at 541.  As explained above, the Court should reject Amin's vagueness arguments because such facial challenges cannot be brought in a revocation proceeding, only as-applied challenges.  *See Van Donk*, 961 F.3d at 325-26; *supra* pp. 23-25.  But even if the Court addresses Amin's arguments, they have no merit.

*First*, Amin argues (at 29-30) that the probation officer's instructions prohibiting contact with extremists and possessing extremist materials were unconstitutionally vague.  But those instructions were not at issue in the revocation hearing.  *See supra* pp. 17-18, 34-35.  If given the same instructions upon release, Amin can seek clarification from the district court or "bring an as-applied challenge in [subsequent] revocation proceedings."  *Van Donk*, 961 F.3d at 325-26.  In the meantime, the Court should not issue an advisory opinion on them.

*Second*, Amin argues (at 30) that the probation officer's instructions regarding internet monitoring were unconstitutionally vague because the use of the phrase "but not be limited to" in the Internet Requirements does not "define any meaningful parameters" for Amin to understand how to be cooperative.

An instruction implementing a condition of release "is unconstitutionally

---

those arguments.  *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017).  Likewise, by failing to raise the arguments before the district court, *see* JA187-188, he forfeited them, *see Hicks v. Ferreyra*, 965 F.3d 302, 305 (4th Cir. 2020).

vague if it doesn't give a probationer 'fair notice of the conduct that it punishes' or is 'so standardless that it invites arbitrary enforcement.'" *Van Donk*, 961 F.3d at 323-24 (quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015)).  But this Court has "never required district courts to craft their conditions of supervised release with exhaustive specificity," much less required as much for probation officer's instructions.  *Comer*, 5 F.4th at 541-42.

Here, the probation officer's use of the phrase "but not be limited to" in the Internet Requirements did not subject Amin to arbitrary enforcement or deny him fair notice of what was required.  In context, the phrase simply notified Amin that he would be subject to further instructions effectuating the monitoring.  In fact, the instruction goes on to provide additional requirements (e.g., "Monitoring may include random examinations of computer systems along with internet, electronic, and media storage devices under your control").  JA157.  And the probation officer spelled out further details and requirements of the monitoring elsewhere, such as in the ED/VA Computer Monitoring Program Participant Agreement, JA299-300, and the "Computer & Internet Data Form," JA302-313, which further undermines any vagueness concerns, *see Comer*, 5 F.4th at 542 (explaining that the probation officer's instructions can mitigate vagueness concerns).

Moreover, as a "general rule[,] . . . probationers may not be punished for inadvertent violations."  *Van Donk*, 961 F.3d at 324.  And this Court has instructed

that "an implied knowledge requirement" may be read into the condition. *Comer*, 5 F.4th at 544. Amin, therefore, had to know of the instruction he supposedly violated before being found "uncooperative." This scienter requirement alleviates any vagueness concerns. *See Van Donk*, 961 F.3d at 325.

Finally, if there was any lingering confusion, Amin could have asked the probation officer. Individuals on supervised release "can always ask their probation officers what activities they are permitted to engage in." *Comer*, 5 F.4th at 543. Indeed, the probation officer *must* provide an explanation to Amin regarding his conditions of release. *See* 18 U.S.C. § 3603(1). Here, the probation officer actually met with Amin and read the Internet Requirements to him, "at which time he indicated he understood" them. JA158. As this Court has explained, "[v]agueness issues are mitigated where the regulated party has the ability to clarify the meaning of the regulation by its own inquiry." *Van Donk*, 961 F.3d at 324 (citation and internal quotation marks omitted).

## IV.    The Probation Officer's Instructions Satisfied the Requirements in 18 U.S.C. § 3583(d).

Amin challenges (at 30-34) the probation officer's instructions regarding computer monitoring and communicating in English online as failing to comply with 18 U.S.C. § 3583(d).[6] This Court reviews whether instructions comply with

---

[6] Amin provides (at 30-34) specific argument only about the monitoring instructions and instructions requiring English communication online. As a result,

§ 3583(d) for an abuse of discretion.  *See Comer*, 5 F.4th at 546; *Van Donk¸* 961 F.3d at 323.  Here, Amin has not demonstrated an abuse of discretion.

Even though the disputed instructions were not promulgated as conditions, *Van Donk* instructs that probation officers' instructions are subject to analysis under § 3583(d).  *See* 961 F.3d at 322.  Instructions must (1) be "reasonably related" to the nature and circumstances of the offense and the history and characteristics of the defendant, as well as the statutory goals of deterrence, protection of the public, and rehabilitation; (2) "involve[] no greater deprivation of liberty than is reasonably necessary" for the purposes of deterrence, protecting the public, and rehabilitation; and (3) be "consistent with any pertinent policy statements issued by the Sentencing Commission."[7]  § 3583(d).

In "determin[ing] whether special conditions of supervised release that impose 'broad restrictions on Internet access' comply with § 3583(d)'s requirements," the Court should consider "1) whether 'the defendant used the

---

he has waived his arguments related to any other instructions.  *See Grayson O Co.*, 856 F.3d at 316.  And other than a passing reference during oral argument about the social media and texting application, JA267, he failed to advance any such arguments at the district court.  Therefore, he has forfeited them as well.  *See Ferreyra*, 965 F.3d at 305.

[7] Other than a conclusory statement (at 33-34) that the "requested special conditions . . . are inconsistent with the Sentencing Commission's policy statements," Amin fails to raise, and therefore waives, any argument regarding the policy statements.

42

internet in [his] underlying offense'; (2) whether 'the defendant had a history of improperly using the internet to engage in illegal conduct'; and (3) whether 'particular and identifiable characteristics of the defendant suggested that such a restriction was warranted.'" *Comer*, 5 F.4th at 546 (quoting *Hamilton*, 986 F.3d at 421-22).

Contrary to Amin's argument (at 33), the district court provided a robust explanation justifying the instructions at the July 2020 hearing. For example, the court explained that "Internet monitoring is going to require that the probation officer can supervise your Internet use to be sure you're not doing the same thing that you were convicted of." JA149-150. Recognizing that Amin had been convicted for "being involved in terrorist organizations," the court explained that the purpose of the monitoring was to ensure that he did not get involved with the same people and in the same conduct again. JA147-148. The court stated that the Internet Requirements were "perfectly reasonable considering the nature of the offense and the activity [Amin was] involved in." JA150-151. The record amply supports this determination.

### A. The probation officer's monitoring instructions were reasonably related to the relevant sentencing factors and appropriately tailored.

Amin argues (at 30-34) that the probation officer's monitoring instructions were not reasonably related to the sentencing factors under § 3583(d)(1) and

impermissibly broad.  The Court should reject this argument.

The monitoring instructions were reasonably related to the relevant factors in § 3583(d)(1).  In committing the underlying offense, Amin used the internet to share his technical expertise—including expertise on avoiding detection or interference from law enforcement—to support ISIS.  JA27-28.  While Amin complains that the instructions involved computer monitoring, even he admits (at 34), albeit in an understatement, that his underlying offense was "tangentially related to computer use."  Amin's conduct demonstrated that he was computer savvy and knew how to anonymize or otherwise hide his activity.  Under these facts, the nature and circumstances of Amin's offense and his history and characteristics supported the probation officer's monitoring instructions. Similarly, the statutory goals of deterrence and protecting the public further supported permitting the probation office to monitor Amin's computer activity to ensure he was not circumventing his internet monitoring and falling back into his old ways—which, of course, is exactly what ultimately happened.

The monitoring instructions, moreover, "involve[d] no greater deprivation of liberty than . . . reasonably necessary for the purposes of" deterrence, protecting the public, and rehabilitation.  § 3583(d)(2).  Amin's level of sophistication with computers, misuse of the internet in committing the underlying offense, and history of concealing online activities warranted intrusive monitoring software and strict

instructions on computer usage in order to screen and monitor his internet use effectively.

Importantly, Amin was not banned from using the internet or computers.  He could still use his computer and the internet for legitimate purposes—just subject to monitoring.  As demonstrated by the college degree and coursework that he completed while on supervised release, he was able to pursue his education and other training while subject to the probation officer's instructions.

Amin relies heavily on distinguishable case law in contending that the monitoring instructions swept too broadly.  None of those cases involved circumstances similar to this situation.  For the most part, either the defendants did not use the internet in committing their offenses, *see United States v. Ellis*, 984 F.3d 1092, 1102-03 (4th Cir. 2021); *United States v. Wroblewski*, 781 F. App'x 158, 163 (4th Cir. 2019); *United States v. Sales*, 476 F.3d 732, 736-37 (9th Cir. 2007), or the conditions amounted to outright bans on computer and internet access, *see United States v. Holena*, 906 F.3d 288 (3d Cir. 2018).

In *United States v. Shiraz*, the district court imposed a special condition requiring computer monitoring for a defendant convicted of possession with intent to distribute a controlled substance and illegally possessing a firearm.  784 F. App'x 141, 142-43 (4th Cir. 2019).  While this Court held that the condition was overbroad under the facts of the case, it "emphasize[d] that supervised release

45

conditions on computer usage" are "not per se impermissible" but "must be narrowed to reflect a sufficient nexus to the [§ 3553(a)] factors." *Id.* at 145.

The defendant in *Shiraz* was differently situated than Amin. Although the defendant in *Shiraz* purchased and sold chemicals online illegally, Amin's conduct over the internet was far more pervasive. It was a defining feature of his terrorism offense, and even at his sentencing, his mitigation defense emphasized the role of the internet in his radicalization. Further, Amin demonstrated technical expertise in obfuscating and anonymizing his internet use, which necessitated broad monitoring. In *Shiraz*, the district court noted only that the defendant had been "deceptive." 784 F. App'x at 144. It said nothing of the sort of technical expertise present in this case.

Amin also cites *United States v. Browder*, 866 F.3d 504 (2d Cir. 2017), but that case weighs in favor of the instructions here. There, the Second Circuit rejected the defendant's Fourth Amendment challenge to his computer monitoring condition and upheld the probation officer's use of RemoteCOM—the same monitoring software that the probation officer used here—as "reasonably necessary" and "narrowly tailored." *Id.* at 512. In part, the court's decision was based on evidence that the defendant, like Amin, had used efforts to conceal evidence of his felonious conduct. *Id.* Like the court in *Browder*, this Court should find that the monitoring instructions were appropriate for Amin.

46

## B. The probation officer's instruction regarding online communications in English was reasonably related to the relevant sentencing factors.

Next, Amin contends (at 34) that the instruction that he use English in his online communications unless he obtained approval was "not reasonably related to the offense" because "the underlying Statement of Facts describes Mr. Amin's offense as occurring in English." This is wrong for two reasons.

*First*, Amin is incorrect that his use of Arabic played no role in his offense. When pleading guilty, Amin admitted that he used his Twitter account to share "a link to an article he authored entitled 'Bitcoin wa' Sadaqat al-Jihad,'" which is translated as "Bitcoin and the Charity of Jihad." JA27. Further, in describing his role in sending RN to join ISIS in Syria, Amin admitted that the FBI seized a package addressed to Amin that "contained . . . a hand written letter containing both Arabic and English." JA28. These two examples alone show that Arabic was used in furtherance of Amin's support of ISIS. As a result, the probation officer's instruction that Amin use English in online communications is reasonably related to the nature and circumstances of the offense and the history and characteristics of the defendant. *See* § 3583(d)(1).

*Second*, each "particular restriction does not require an offense-specific nexus." *United States v. Douglas*, 850 F.3d 660, 663 (4th Cir. 2017) (citation and internal quotation marks omitted). Rather, a restriction can serve one of the other

47

factors listed in § 3583(d)(1), including the statutory goal of protecting the public. Here, it makes sense that the probation officer instructed Amin to communicate online in English so that the probation officer could appropriately monitor Amin's online communications to see if he was at risk of recidivism and to protect the public. *See* § 3583(d)(1).

Finally, this instruction limited Amin only in his online communications; he could still use Arabic in other communications. And Amin could always seek permission to use Arabic in online communications. Thus, this instruction was narrowly tailored to permit the probation officer to protect the public and ensure that Amin did not fall back into the same conduct underlying his felony conviction.

### C.    The probation officer's instructions did not unlawfully infringe upon Amin's First Amendment rights.

Amin contends (at 34-37) that the probation officer's instructions infringed upon his First Amendment rights. But "[a] condition of supervised release may restrict a probationer from engaging in what would otherwise be protected conduct, so long as the condition comports with 18 U.S.C. § 3583(d)." *Van Donk*, 961 F.3d at 326. A defendant's First Amendment "challenge cannot succeed if the condition," or in this case, the instruction, "meets the requirements of § 3583(d)." *Comer*, 5 F.4th at 545-46.

As discussed above, Amin's opening brief—and his brief before the district court—raised issues related to § 3583(d) only for the monitoring instructions and

48

instruction regarding communicating in English online.  *See supra* p. 42 n.6.

Because these instructions are appropriate under § 3583(d), they do not violate the

First Amendment.  Even assuming the remaining instructions cover conduct

protected by the First Amendment, he has failed to articulate any basis for why

those instructions fall outside of § 3583(d).

**V.     Any Error in Holding Amin in Violation for His Failure to Follow the Probation Officer's Instructions Was Harmless.**

Even when a district court errs in finding a violation of supervised release,

the Court should still affirm if the error was harmless.[8]  *See United States v. Cohen*,

63 F.4th 250, 256 (4th Cir. 2023); Fed. R. Crim. P. 52(a).  Multiple courts have

held that an error in finding a supervised-release violation was harmless when the

defendant was properly found to have committed other violations.  *See, e.g.*,

*United States v. Malone*, 846 F. App'x 355, 362 (6th Cir. 2021); *United States v.*

*Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014); *United States v. English*, 400

F.3d 273, 276 (5th Cir. 2005).  Here, the outcome of the proceedings would have

been the same even if the district court had declined to find Amin in violation

based on his failure to follow the probation officer's instructions.

---

[8] In *Cohen*, this Court cautioned that its harmless-error "conclusion may well be different had the district court revoked [the defendant's] supervision because of multiple unrelated incidents or independent violations."  63 F.4th at 256.  But the concerns emanating from this admonition are not present here, as any error did not impact the outcome.

Amin concedes (at 1) that he "associat[ed] with convicted felons and thereby contravened that condition of supervised release." The nature of that violation was serious. This is not a situation in which Amin was associating with felons convicted of wholly unrelated offenses. Three felons with whom Amin associated had been convicted of terrorism or other similar offenses, which raised substantial concerns about Amin's risk for recidivism. This violation alone warranted revocation of his supervised release.[9]

Amin's sentencing exposure was the same whether he had been found to commit the one violation of associating with known felons or all of the alleged violations. The statutory maximum penalty—two years of imprisonment—would not have changed. *See* 18 U.S.C. § 3583(e)(3).

Likewise, the recommended guidelines sentence would have remained the same. In the Sentencing Guidelines, the policy statements calculate recommended sentences for supervised-release violations based on the defendant's criminal history at the time of his original sentencing (which does not vary with the nature of the violation) and the "grade" of the violation (which depends on the nature of

---

[9] Amin emphasizes (at 10 n.1) that John Walker Lindh did not have his supervised release revoked for their meetings. As the government explained below, revoking Lindh's supervised release would have jeopardized the ongoing investigation into Amin and the government did not obtain the necessary authorization to use key evidence from a foreign country until late 2022. JA284-285, JA290.

the violation).  *See* U.S.S.G. § 7B1.4.  "Where," as here, "there is more than one

violation of the conditions of supervision . . . the grade of the violation is

determined by the violation having the most serious grade."  *Id.* § 7B1.1(b).  As the

parties recognized below, the alleged violations were all Grade C violations.

JA172, JA199.  Thus, Amin's guidelines sentence would have been calculated

using a Grade C violation regardless of whether he committed one or more such

violations.

Finally, even if the district court had found Amin in violation based only on

his association with known felons, it still would have considered his flagrant

disregard of the probation officer's instructions in determining the appropriate

sanction.  It is undisputed that Amin used the Linux OS to circumvent the internet

monitoring and to conceal his online communications with known extremists.  The

district court would have considered that conduct when assessing "the history and

characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and "the need for the

sentence imposed . . . to afford adequate deterrence to criminal conduct . . . [and]

to protect the public from further crimes of the defendant," § 3553(a)(2)(B)-(C).

*See* § 3583(e).  As a result, there is no reason to think the outcome would have

been any different.

## VI.    The District Court's Reimposition of a Lifetime Term of Supervised Release Based on the Nature of Amin's Violations Was Reasonable.

This Court reviews the "district court's revocation sentence" using "a more

'deferential appellate posture' than when reviewing original sentences." *United States v. Gibbs*, 897 F.3d 199, 203 (4th Cir. 2018) (quoting *United States v. Crudup*, 461 F.3d 433, 439 (4th Cir. 2006)). The "district court has broad discretion when imposing a sentence upon revocation of supervised release." *United States v. Webb*, 738 F.3d 638, 640 (4th Cir. 2013). This Court "will affirm a revocation sentence if it is within the statutory maximum and is not 'plainly unreasonable.'" *Id.* (quoting *Crudup*, 461 F.3d at 438). In making this determination, the Court must decide first whether the sentence is procedurally or substantively unreasonable and then whether it is *plainly* unreasonable. *Id.*

A.     **The district court's reimposition of lifetime supervised release was procedurally reasonable.**

Amin argues (at 37-40) that the district court erred by failing to provide an adequate explanation for reimposing a lifetime term of supervised release. The court's explanation was sufficient in this case.

For a sentence to be procedurally reasonable, the district court must explain the reasons for it. *United States v. Helton*, 782 F.3d 148, 151-52 (4th Cir. 2015). The amount of explanation that is required "depends upon the circumstances." *Rita v. United States*, 551 U.S. 338, 356 (2007). "Sometimes the circumstances will call for a brief explanation; sometimes they will call for a lengthier explanation." *Id.* at 357. The overriding point is that the court "should set forth enough to satisfy the appellate court that [it] has considered the parties' arguments

52

and has a reasoned basis for exercising [its] own legal decisionmaking authority."
*Id.* at 356. "[I]n determining whether there has been an adequate explanation," the
"context surrounding a district court's explanation may imbue it with enough
content . . . to evaluate . . . whether the court considered the § 3553(a) factors and
whether it did so properly." *United States v. Montes-Pineda*, 445 F.3d 375, 381
(4th Cir. 2006).

Here, the district court sufficiently explained its reasons for Amin's
sentence, including lifetime supervised release. After announcing the sentence,
and when asked by defense counsel for a different term of imprisonment, the court
stated that "the nature of these violations warrant[s] what I've done in this case."
JA294-295. While brief, the district court's explanation was sufficient to inform
the parties and this Court that the nature of the offense was driving its decision.
The district court was "not obligated to 'robotically tick through the § 3553(a)
factors.'" *Cohen*, 63 F.4th at 258 (quoting *Helton*, 782 F.3d at 153).

The "[u]ndisputed facts presented to the district court . . . make apparent the
basis for its explanation." *Montes-Pineda*, 445 F.3d at 381. Amin admitted that he
had associated with known felons who had been convicted of terrorism or similarly
serious offenses and that he took sophisticated technical measures to circumvent
the probation officer's internet monitoring and conceal his online communications
with known extremists. Further evidence showed that he possessed ISIS

beheading videos and was disseminating ISIS propaganda.  This evidence raised

significant concerns that Amin was falling back into the same behavior that led to

his original conviction.  In this context, the district court's focus on the nature of

the violations was readily understandable and the concerns were "patently

obvious."  *Id.*

The brevity of the district court's explanation was also reasonable in light of

the procedural background.  The court had already imposed a lifetime term of

supervised release in 2015, and Amin had not objected or otherwise sought to

challenge it.  Nor did he ever move to reduce his term of supervised release prior to

his arrest for these violations.  The district court had no reason to change the status

quo at the revocation hearing—quite the opposite considering the nature of the

violations.

Amin, meanwhile, did not advance any nonfrivolous arguments to warrant a

further explanation.  In a page at the end of a 24-page pleading submitted in

advance of the revocation hearing, Amin asked the Court to reduce the length of

his lifetime term of supervised release, characterizing the lifetime term as "extreme

and unusual," "unusually harsh," and "unsupported by the underlying offense (or

even alleged violations)."  JA201-202.  Then, at the end of her oral argument at the

revocation hearing, Amin's attorney argued that his supervised release should be

*terminated* because he was "being watched by the FBI" and "keep[ing] a probation

officer on this matter" was "just a waste of resources." JA283. Amin's arguments did not provide a meaningful reason to reduce the term of supervised release, considering that he had just committed serious violations that indicated he was slipping back into the same conduct that led to his original conviction for conspiring to provide material support to ISIS. Given the "parties' focus" at the revocation hearing "on the appropriate term of imprisonment," the district court's explanation was sufficient. *United States v. Williams*, 5 F.4th 500, 509 (4th Cir. 2021).

Amin's reliance on *United States v. Rakhmatov*, No. 21-151(L), 21-167 (Con), 2022 WL 16984536 (2d Cir. Nov. 17, 2022), is unavailing. *Rakhmatov* involved a direct appeal of a lifetime term of supervised release imposed at the initial sentencing even though the defendant "had committed no prior offenses, and two of his co-defendants did not receive supervised release sentences." *Id.* at *2. But here, the district court was reimposing a lifetime term of supervised release after Amin committed serious supervised-release violations, the nature of which indicated he was falling back into the same conduct that led to his original terrorism conviction. Unlike in *Rakhmatov*, there was no mystery as to why the district court was reimposing the same term of supervised release.

Even if the district court erred by failing to explain its reimposition of a lifetime term, the error is harmless. Such an error is harmless if it "did not have a

substantial and injurious effect or influence on the result and [the Court] can say

with fair assurance that the district court's explicit consideration of the defendant's

arguments would not have affected the sentence imposed." *United States v.*

*Boulware*, 604 F.3d 832, 838 (4th Cir. 2010) (quoting *United States v. Lynn*, 592

F.3d 572, 585 (4th Cir. 2010)) (cleaned up).  Given the circumstances described

above, including the "weakness of [Amin's] argument" for terminating supervised

release, "the notion that having to explain its analysis further might have changed

the district court's mind . . . is simply unrealistic . . . and remand for resentencing

would be a pointless waste of resources."  *Id.* at 840.

**B.    The district court's reimposition of lifetime supervised release was substantively reasonable.**

A sentence is substantively reasonable "if the totality of the circumstances

indicates that the court had a proper basis for its conclusion that the defendant

should receive the sentence imposed."  *Gibbs*, 897 F.3d at 204 (quoting *United*

*States v. Slappy*, 872 F.3d 202, 207 (4th Cir. 2017)) (internal quotation marks

omitted).  "A sentence within the Guidelines range is presumed on appeal to be

substantively reasonable."  *Helton*, 782 F.3d at 151.

Contrary to Amin's suggestion (at 39), a lifetime term of supervised release

is not reserved for offenses involving "child pornography" or a "violent crime."

Congress has authorized the imposition of a lifetime term of supervised release for

material-support offenses like the one that Amin committed.  *See* 18 U.S.C.

56

§§ 2332b(g)(5)(B)(i), 3583(j).  Likewise, the Sentencing Guidelines recommend a supervised-release term "up to life" for such offenses where, as here, the "commission . . . resulted in, or created a foreseeable risk of, death or serious bodily injury to another person."  U.S.S.G. § 5D1.2(b)(1).  Courts have imposed lifetime terms of supervised release for material-support offenses.  *See, e.g.*, *United States v. Saleh*, No. 21-2955, 2023 WL 2530742, at *1 (2d Cir. Mar. 16, 2023); *United States v. Tounisi*, 900 F.3d 982, 989 (7th Cir. 2018); *United States v. Bell*, 81 F. Supp. 3d 1301, 1325-26 (M.D. Fla. 2015).

In this case, because the lifetime term of supervised release fell within the range recommended by the guidelines, it is presumptively reasonable.  Under the totality of the circumstances, there was an adequate basis for it as well.  Amin's underlying terrorism offense was serious, and the nature of Amin's violations strongly suggested that he was falling back into that conduct and at a high risk of recidivism.  The district court had a proper basis for concluding that a lifetime term of supervised release remained necessary.

## Conclusion

Because the district court did not err in holding Amin in violation of his supervised release and reimposing a lifetime term of supervised release, this Court should affirm the judgment.

Respectfully submitted,

Jessica D. Aber
United States Attorney

_____/s/_____
Thomas W. Traxler, Jr.
Assistant United States Attorney

58

## Statement Regarding Oral Argument

The Court has tentatively calendared this case for oral argument during the September 19–22, 2023 sitting.  The United States is prepared to present oral argument to the extent that it would aid the Court in reaching its decision.

## Certificate of Compliance

I certify that this brief was written using 14-point Times New Roman typeface and Microsoft Word.

I further certify that this brief does not exceed 13,000 words (and is specifically 12,991 words) as counted by Microsoft Word, excluding the table of contents, table of authorities, signature block, statement regarding oral argument, this certificate, the certificate of service, and any addendum.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.

/s/
_____

Thomas W. Traxler, Jr.
Assistant United States Attorney