**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-4283

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

ALI SHUKRI AMIN,

        Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Claude M. Hilton, Senior District Judge.  (1:15−cr−00164−CMH−1)

Argued:  September 22, 2023                   Decided:  October 30, 2023

Before WILKINSON, KING, and RUSHING, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge King and Judge Rushing joined.

**ARGUED:**  Jessica Nicole Carmichael, CARMICHAEL ELLIS & BROCK, PLLC, Alexandria, Virginia, for Appellant.  Thomas W. Traxler, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:**  Jessica D. Aber, United States Attorney, Richmond, Virginia, Gavin R. Tisdale, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

WILKINSON, Circuit Judge:

Ali Amin served five years in federal prison after pleading guilty to conspiring to provide material support to ISIS. He was released in 2020 subject to a lifetime of supervised release. Three years later, the district court found that Amin had violated numerous conditions of his supervised release. The court sentenced him to a year's imprisonment and reimposed a lifetime of supervised release. Amin brings several challenges to this sentence. For the reasons discussed, we reject them all.

I.

A.

In 2015, 17-year-old Amin pleaded guilty to conspiracy to provide material support to a foreign terrorist organization—namely, the Islamic State of Iraq and Syria (ISIS)—in violation of 18 U.S.C. § 2339B.

Amin cultivated a robust virtual network to reach and assist ISIS supporters. Operating from his home in Virginia, he created pro-ISIS content and distributed it globally using anonymous social media accounts. Amin rapidly became a prolific proselytizer of jihadist ideology. His Twitter account gained more than 4,000 followers and featured over 7,000 tweets, many of which promoted ISIS's violent practices.

Amin also authored several technical articles that taught ISIS sympathizers how to conceal their illicit online activity. In one article, he explained how they could use encryption and anonymity software to evade law enforcement detection. In another, he detailed how to donate to jihadists anonymously using the then-nascent cryptocurrency Bitcoin.

Amin's extremist activities extended into the physical world. Amin radicalized R.N., an 18-year-old Virginia resident, and connected him with ISIS supporters abroad. He then facilitated R.N.'s travel to Syria to join ISIS, even accompanying him to Washington Dulles Airport for his departing flight. Once R.N. reached Syria, Amin delivered a letter to R.N.'s family that indicated R.N. would not see them again. The government reported that R.N. was likely killed near the Syria-Turkey border a year after he arrived. This was not an isolated incident. Amin also helped two ISIS recruits from outside the United States travel into Syria. Both are now believed to be dead.

B.

The district court sentenced Amin to 136 months' imprisonment and a lifetime of supervised release. The court later reduced Amin's prison term to 72 months upon the government's motion to reduce his sentence for providing substantial assistance. *See* Fed. R. Crim. P. 35(b). The terms of supervised release included three conditions relevant to this appeal:

> Standard Condition 3, which required Amin to "follow the instructions of the probation officer."
>
> Standard Condition 9, which required Amin to "not associate with any person convicted of a felony, unless granted permission to do so by the probation officer."
>
> Special Condition 2, which required Amin to "be subject to any screening or monitoring of internet use, as directed by the probation officer."

J.A. 60–61.

Amin's period of supervised release started when he left prison on May 4, 2020. His probation officer issued instructions to effectuate the conditions imposed by the district

3

court at sentencing. The instructions required Amin to (1) submit to computer monitoring; (2) obtain permission before using a language other than English in online communications; (3) not view, possess, access, or use material that reflects extremist or terrorist views or is deemed inappropriate by the U.S. Probation Office; and (4) have "no contact with any known Extremist or anyone suspect in any known Extremist activity." J.A. 122.

Pursuant to the probation officer's instructions, Amin enrolled in a computer monitoring program on May 6, 2020. He successfully sought authorization to use two computers; one operating system, Windows 10; and three social media applications, Skype, Microsoft Messaging, and Zoom. Amin installed RemoteCOM software on his computers so that the government could monitor his online activity. He signed the computer monitoring program's agreement that he would not use unauthorized systems or otherwise circumvent monitoring.

Representing himself, Amin challenged the probation officer's instructions as unconstitutional and requested counsel. In response, the government moved to have the instructions added as four new conditions of Amin's supervised release. To "avoid any claim of undue vagueness," the government also proposed to modify the fourth instruction to read, "You shall have no contact with any individual you have reason to believe supports the use of illegal violence to coerce or intimidate people or governments." J.A. 122.

The district court declined to formalize the probation officer's instructions as new conditions. It found that the proposed conditions did not add anything new to the already-approved conditions, but merely clarified them. The court stated that the probation officer

4

had discretion to "determine what these reasonable conditions are to monitor somebody's computer" without the court's approval. J.A. 150. It clarified that it was "just plain common sense that once you're on supervised release, that part of your computer monitoring is that you don't talk with those people again, you don't possess that material, and you don't deal in those things." J.A. 147–48. Amin did not appeal this ruling or further challenge the probation officer's instructions until the government initiated revocation proceedings.

C.

Amin seemed to make progress during the three years following his release from prison. He graduated summa cum laude from Northern Virginia Community College, earning nineteen technical certificates along the way. He was a semester away from obtaining a master's degree in information technology management. Amin's technical studies enabled him to obtain stable employment as a digital solutions architect. He also supported his community by volunteering at a local mosque.

Despite pursuing these positive initiatives, Amin began violating the conditions of his supervised release in May 2020—the very same month he was released.

Amin violated Standard Condition 9 by associating with known felons without his probation officer's approval. He had multiple meetings and engaged in encrypted online conversations with John Walker Lindh—a person Amin knew was a felon and referred to as the "American Taliban." J.A. 250; *see also United States v. Lindh*, 227 F. Supp. 2d 565 (E.D. Va. 2002). Amin was also aware that at least two of the seven other convicted felons that he associated with had committed terrorism-related offenses.

Amin additionally committed numerous violations of the probation officer's instructions pertaining to his internet use. He used the operating system Linux, which had not been approved by his probation officer and could not be monitored by RemoteCOM. He deleted online chat messages and used a virtual private network to evade monitoring. He sent and received encrypted communications on the unauthorized social media applications Signal, Telegram, and WhatsApp. In one of these messages, he communicated his desire to "exterminate" all people who did not share his radical Islamic beliefs. J.A. 248. He frequently used Arabic in online communications without approval. And he followed the teachings of several figures who were known by the government to express extremist views encouraging terrorist activities.

The government highlighted this conduct in its petition for revocation. In a subsequent addendum, the government stated that a lawful search of Amin's residence had uncovered a hard drive containing ISIS propaganda videos that depict ISIS members beheading prisoners and instructing individuals to conduct lone wolf attacks. The government also discovered that Amin had prepared a "go bag" that contained "survival equipment, clothes, food, unused cellphones, and a knife." J.A. 169–70.

Prior to the revocation hearing, the government informed the district court that it would not pursue violations of the probation officer's instructions that prohibited Amin from using extremist material or having contact with known extremists.

Amin did not dispute the government's factual allegations. Amin claimed, however, that they did not constitute violations of his conditions of supervised release. He argued that the probation officer's instructions were void because they were not properly

6

promulgated, and posited that even if they were valid, they were impermissibly broad and vague. He requested that, if found in violation of the conditions of his supervised release, he be sentenced to no more than sixty days' incarceration and have the term of his supervised release adjusted downward from life.

The district court found Amin "in violation of the terms and conditions of [his] supervised release." J.A. 294. The court reasoned that the computer monitoring program instituted by the probation officer was in furtherance of the internet monitoring special condition as it was used to "check what Internet use [Amin] had." J.A. 265. The court issued a within-Guidelines sentence of twelve months' imprisonment and reimposed lifelong supervised release with the same conditions as before. In doing so, it stated that "the nature of these violations warrant[s] what I've done in this case." J.A. 294–95. Amin timely appealed.

## II.

Amin first contends that the probation officer's instructions with regard to his internet use were void because they were additional special conditions of supervised release that needed to be promulgated by the district court. Because the district court did not do so, Amin claims he could not be found in violation of them.

This claim is without merit. The probation officer's instructions at issue were not new conditions of supervised release. Rather, they were a valid means of instituting the court-imposed conditions of supervised release. It was therefore appropriate for the district court to consider Amin's violation of these instructions at the revocation proceeding.

## A.

District courts and probation officers have substantial discretion to work in tandem in the crafting and management of supervised release. *United States v. Hamilton*, 986 F.3d 413, 418 (4th Cir. 2021). In specifying supervised release conditions, the district court need not go in search of needless contingencies and complexities. *See id.* at 420. Rather, "as long as the court orders the broad principle guiding the condition of release and retains the ultimate authority over revoking release, the court may allow the probation officer to fill in many of the details necessary for applying" it. *United States v. Comer*, 5 F.4th 535, 547 (4th Cir. 2021). For example, a district court must itself be the one to order a sex offender to attend a treatment program. *United States v. Van Donk*, 961 F.3d 314, 327 (4th Cir. 2020). But the court may delegate the authority to establish "rules, requirements, and conditions" associated with the program until discharge. *Id.* at 318, 327. Similarly, a district court that sets out a condition that prohibits a defendant from using social media without permission may authorize the probation officer to be the one who grants such permission. *Comer*, 5 F.4th at 547.

The upshot is that, while the district court must itself issue conditions of supervised release, *see Van Donk*, 961 F.3d at 327, it is a "permissible delegation[]" for the probation officer "to fashion the means or details of court-ordered" conditions, *Comer*, 5 F.4th at 547. This delegation is consistent with the statutory requirement that the probation officer "instruct . . . a person on supervised release . . . as to the conditions specified by the sentencing court." 18 U.S.C. § 3603(1); *see also* U.S.S.G. § 5D1.3(c)(13) ("The defendant shall follow the instructions of the probation officer related to the conditions of supervision.").

8

The probation officer's "significant role in the day-to-day management of supervised release" makes good sense. *Hamilton*, 986 F.3d at 417. District courts are busy places. It is unrealistic to expect a court to engage in the minutia of implementation once it has set out a condition of supervised release. Additionally, the probation officer interacts with the defendant much more frequently than the district court does. He is thus well positioned to assess the defendant's progress and tailor instructions accordingly.

B.

The district court and the probation officer properly carried out their respective responsibilities to oversee Amin's internet use on supervised release. The district court established the "broad principle" that Amin's internet use be subject to screening and monitoring, and the probation officer "fashion[ed] the means or details of [this] court-ordered" condition. *Comer*, 5 F.4th at 547. As we noted in *Comer*, "district courts can allow probation officers to make internet-access determinations without violating Article III." *Id.* at 548. The probation officer's instructions to Amin were a valid means of enforcing Special Condition 2, that Amin "be subject to any screening or monitoring of internet use, as directed by the probation officer," and Standard Condition 3, that Amin "follow the instructions of the probation officer." J.A. 60–61. The instructions that Amin only use authorized computers, operating systems, and software applications; that Amin install a monitoring program on his computers; and that Amin obtain the probation officer's permission before using a language other than English in online communications all helped the government monitor Amin's internet use. Indeed, the district court reviewed these very instructions and refused to add them as conditions of supervised release because it found

9

them to be "perfectly reasonable" for the probation officer to issue. J.A. 153. We agree with the district court's determination that the instructions did "nothing more than clarify[] [its] ruling" that imposed the conditions of supervised release. J.A. 149.

The use of computer monitoring software to effectuate the monitoring of Amin's internet use was especially reasonable given that Amin was a sophisticated computer user adept at concealing his online activities. His initial offense involved operating a popular Twitter account and a technical blog where he taught jihadists how to evade government surveillance using encrypted messaging applications and blockchain technology. Amin continued to demonstrate digital acumen on supervised release, earning numerous technical certificates and completing most of a master's degree in information technology management. The reasonableness of the probation officer's monitoring approach was borne out by Amin's subsequent conduct: he installed an unauthorized operating system and used unauthorized encrypted messaging applications to evade the government's monitoring software successfully.

Because the internet-monitoring instructions constituted a valid means of implementing the district court's conditions, there was no need for them to be promulgated as separate special conditions. Contrary to Amin's claims, the district court did not have to put the probation officer's instructions in writing and pronounce them orally during a modification hearing in which Amin was represented by counsel. *See* 18 U.S.C. § 3583(e)–(f); Fed. R. Crim. P. 32.1(c)(1). Rather, the probation officer properly instructed Amin pursuant to 18 U.S.C. § 3603(1). The district court therefore did not err in considering

10

Amin's violations of these instructions when it found that Amin violated his conditions of supervised release.

C.

Amin also tries to use this appeal as a vehicle to challenge the validity of other instructions not at issue in his revocation hearing. He makes much of the instructions that he not possess or access material that the probation officer deemed extremist or inappropriate, and that he not associate with known extremists. But the government declined to pursue any violation of these extremism-related instructions at the revocation hearing. And there is no evidence that the district court considered these instructions in imposing the revocation sentence. The extremism-related instructions are thus not at issue here, and we decline to render an advisory opinion with regard to them.

III.

Amin next claims that the probation officer's instructions were unconstitutionally vague, impermissibly broad, and violative of his First Amendment rights. To the extent Amin raises facial challenges to the probation officer's instructions, this is the wrong juncture at which to do so. Moreover, all three claims are without merit.

A.

We have held that "a defendant may not challenge the special conditions of his original term of supervised release during later revocation proceedings." *United States v. Sanchez*, 891 F.3d 535, 539 (4th Cir. 2018). Rather, the conditions "must instead be challenged on direct appeal from the original conviction and sentence." *United States v. Holman*, 532 F.3d 284, 287 n.1 (4th Cir. 2008). As we clarified in *Van Donk*, a supervisee

11

"may bring an as-applied challenge in revocation proceedings" to a condition of release, but he may not challenge the condition's facial validity. 961 F.3d at 325–26. Revocation "simply [i]s not the time for such a challenge" because the person on supervised release could have raised the facial challenge earlier, before he violated his release conditions. *Sanchez*, 891 F.3d at 539.

The logic underlying the prohibition on facial challenges of conditions of release during revocation proceedings applies with even greater force to facial challenges of a probation officer's instructions during such proceedings. Unlike conditions of supervised release, which generally cannot be modified until the district court holds a hearing at which the defendant is represented by counsel, Fed. R. Crim. P. 32.1(c)(1), a probation officer's instructions are "subject to ongoing discussion" between the probation officer and the supervisee. *Van Donk*, 961 F.3d at 324. Individuals "on supervised release can always ask their probation officers what activities they are permitted to engage in." *Comer*, 5 F.4th at 543. And probation officers can modify their instructions based on feedback from the individuals under their supervision. *See id.* at 547; *Van Donk*, 961 F.3d at 324.

Amin had ample opportunity to challenge or clarify the probation officer's instructions before violating them. He admitted as much at the revocation hearing, stating, "I did take missteps. I could have been more communicative with the probation officer. I could have petitioned the court when I felt that something was amiss." J.A. 291.

For example, if the probation officer had rejected a request by Amin to use Arabic in online communications with family abroad, Amin could have exercised his "right to apply to the sentencing court for a clarification or change of conditions" as they were

applied by the probation officer's instructions. Advisory Committee's Notes on Fed. R. Crim. P. 32.1; *see, e.g.*, *United States v. Lawrence*, 300 F.3d 1126, 1128–29 (9th Cir. 2002); *United States v. Dempsey*, 180 F.3d 1325, 1325–26 (11th Cir. 1999); *United States v. Lingle*, 557 F.Supp.3d 673, 676–77, 683 (E.D.N.C. 2021). But instead of using the ample process that he was afforded to clarify or challenge the instructions, Amin blatantly violated them in numerous ways. The revocation proceedings that have resulted are therefore not an appropriate forum for him to bring facial challenges to the instructions. And for the reasons that follow, any vagueness and overbreadth concerns that remain are insubstantial.

## B.

An instruction issued pursuant to a condition of supervised release "is unconstitutionally vague if it doesn't give a probationer 'fair notice of the conduct that it punishes' or is 'so standardless that it invites arbitrary enforcement.'" *Van Donk*, 961 F.3d at 323–24 (quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015)). Three aspects of Amin's situation allay any concerns that he lacked fair notice or was subject to arbitrary enforcement.

First, Amin was able to clarify and challenge the scope of his instructions. Vagueness concerns "are mitigated where the regulated party has the ability to clarify the meaning of the regulation by [his] own inquiry." *Id.* at 324 (internal quotations omitted). As he admitted during the revocation hearing, Amin could have "consult[ed] his probation officer" to clarify the scope of the instructions and ameliorate the risk that he would be subject to unexpected or arbitrary enforcement. *Hamilton*, 986 F.3d at 423. Indeed, this

court has found that the use of "categorical terms to frame the contours of supervised release conditions" still allows for "adequate notice of prohibited conduct," in part because the dialogue between a probation officer and a supervisee creates "a commonsense understanding of what activities the categories encompass." *Id.* (internal quotations omitted).

Second, as noted, Amin agreed to a detailed computer monitoring program, but then plainly violated the conditions of that program. Amin signed a computer monitoring program agreement that clearly stated he could not use unauthorized systems or applications. He then willfully breached the agreement by using a Linux operating system and multiple encrypted messaging applications, all of which were unauthorized. There was thus "little practical risk" that Amin's violations arose "through a simple misunderstanding of [the] bounds" of the probation officer's instructions. *Comer*, 5 F.4th at 544. The instructions and the computer program agreement provided Amin with ample notice that these unauthorized activities could be punished by revocation of his supervised release.

Third, any remaining fair notice concerns were alleviated by this court's rule that Amin could only be punished for knowing violations of his release conditions. Even if Amin did inadvertently violate an instruction of the probation officer, his "release could not be revoked because of that accidental transgression because, as a 'general rule[,] . . . probationers may not be punished for inadvertent violations.'" *Id.* (quoting *Van Donk*, 961 F.3d at 324) (alterations in original). This "de facto scienter requirement" further "mitigates vagueness concerns." *Van Donk*, 961 F.3d at 324–25; *see also Hamilton*, 986 F.3d at 424.

14

Amin had fair notice that his conduct was prohibited by the probation officer's instructions. Far from exacerbating any vagueness concerns, the instructions added specificity to his supervised release conditions. *See Comer*, 5 F.4th at 542–43 (citing cases for the proposition that a probation officer's instructions can provide fair notice of prohibited conduct notwithstanding a broadly-worded condition of supervised release).

C.

We also disagree with Amin's contention that the probation officer's instructions were overbroad in violation of 18 U.S.C. § 3583(d). When a district court orders a defendant to abide by the probation officer's instructions, those instructions must comply with the conditions of § 3583(d). *See Van Donk*, 961 F.3d at 322; *United States v. Ellis*, 984 F.3d 1092, 1098 (4th Cir. 2021). To determine whether instructions "that impose 'broad restrictions on Internet access' comply with § 3583(d)'s requirements, we consider three factors: (1) whether 'the defendant used the internet in [his] underlying offense'; (2) whether 'the defendant had a history of improperly using the internet to engage in illegal conduct'; and (3) whether 'particular and identifiable characteristics of the defendant suggested that such a restriction was warranted.'" *Comer*, 5 F.4th at 546 (quoting *Hamilton*, 986 F.3d at 421–22).

The probation officer's instructions at issue easily survive scrutiny under this tripartite standard. First, Amin used the internet in his underlying offense by operating as an online influencer to share pro-ISIS propaganda and teach his followers how to support ISIS anonymously. Second, he pervasively used the internet to engage in illegal conduct, including by convincing ISIS supporters to fight and die in Syria. Third, Amin's

15

demonstrated technical aptitude and desire to help himself and his followers evade government surveillance of their illicit activity were particular and identifiable characteristics to suggest that robust computer monitoring instructions were warranted to implement the internet-monitoring condition. Therefore, "[a]ll three factors suggest the Internet restriction was justified in this case." *Hamilton*, 986 F.3d at 422.

This is not a case of unfettered computer monitoring "not tethered to any particular conduct" that "violates the requirement that the computer-usage conditions avoid restricting [a defendant's] liberty more than reasonably necessary." *United States v. Shiraz*, 784 F. App'x 141, 145 (4th Cir. 2019) (per curiam). Amin's sharing of extremist content with thousands of online followers and his use of advanced surveillance mitigation techniques made the probation officer's instruction that he enroll in a holistic computer monitoring program a reasonably necessary restriction on his liberty. The internet monitoring-related instructions were appropriately aimed at "crucial instrumentalities" that Amin "weaponized . . . to commit [his] underlying offense." *Comer*, 5 F.4th at 546.

Moreover, Amin was not subject to a "complete ban on internet access" like the one we held overbroad in *Ellis*. 984 F.3d at 1104–05. There, the blanket ban on internet use restricted the defendant's "reentry to society, including for securing housing and employment." *Id.* at 1105. Here, conversely, the limited monitoring program implemented by the probation officer permitted Amin to pursue a master's degree in information technology management, complete numerous online courses, and use the internet in his work as a digital solutions architect. The probation officer's instructions implementing the special condition to monitor internet use were therefore not overbroad.

16

D.

Amin's First Amendment challenge fails alongside his overbreadth challenge. Like conditions of supervised release, instructions effectuating such conditions "may restrict a probationer from engaging in what would otherwise be protected conduct, so long as the [instruction] comports with 18 U.S.C. § 3583(d)." *Van Donk*, 961 F.3d at 326. For the reasons discussed in the previous section, the instructions at issue here satisfied § 3583(d)'s requirements. They are thus immune from a First Amendment overbreadth challenge. *Van Donk*, 961 F.3d at 326–27.

IV.

Amin's final contention is that the district court erred in reimposing a lifetime of supervised release as part of his revocation sentence. "This Court will affirm a revocation sentence if it is within the statutory maximum and is not plainly unreasonable." *United States v. Patterson*, 957 F.3d 426, 436 (4th Cir. 2020). When a sentence is within the statutory maximum, as Amin's was, we first examine whether the sentence was "unreasonable at all, procedurally or substantively." *United States v. Coston*, 964 F.3d 289, 296 (4th Cir. 2020) (internal quotations omitted). "Only if we find the sentence unreasonable must we decide whether it is plainly so." *United States v. Webb*, 738 F.3d 638, 640 (4th Cir. 2013) (internal quotations omitted). We hold that Amin's sentence was both procedurally and substantively reasonable.

A.

For a sentence to be procedurally reasonable, the district court must explain the reasons for it. *Coston*, 964 F.3d at 297. The district court "should set forth enough to satisfy

17

the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). "Sometimes the circumstances will call for a brief explanation; sometimes they will call for a lengthier explanation." *Id.* at 357. And sometimes "the context and the record" clarify the reasoning underlying the district court's conclusion. *Id.* at 359.

The district court's explanation for reimposing Amin's life term of supervised release, while brief, was sufficient given the context of the "[u]ndisputed facts" that "ma[de] apparent the basis for its explanation." *United States v. Montes-Pineda*, 445 F.3d 375, 381 (4th Cir. 2006). After being initially sentenced to a lifetime of supervised release, which he did not appeal, Amin committed numerous flagrant violations of the conditions of that release. He violated the plain text of Standard Condition 9 by having multiple meetings with people whom he knew to have committed terrorism-related felonies. He also violated the plain text of Special Condition 2 by purposefully evading internet monitoring with unauthorized, encrypted messaging applications. These facts made the reason for the district court's reimposition of a life term of supervised release—the same term that Amin would have been subject to had he not committed the violations—"so self-evident and unassailable" that the court's brief explanation for its sentence was not procedurally unreasonable. *United States v. Elbaz*, 52 F.4th 593, 613 (4th Cir. 2022).

Like in *Rita*, "the judge might have said more." 551 U.S. at 359. But like in *Rita*, he did not have to. *Id.* Here, it was "obvious from the face of the record that these restrictions were motivated by a desire to protect against [Amin's] future capacity to commit similar" terrorism-related offenses. *Elbaz*, 52 F.4th at 613. The district court's brief explanation that

18

"the nature of these violations warrant[ed]" the reimposition of a lifetime of supervised release drew from his prior familiarity with the case and from its obvious context and background. J.A. 294–95. Thus the explanation was sufficient.

### B.

Amin's sentence was also substantively reasonable. A sentence is substantively reasonable "if the totality of the circumstances indicates that the court had a proper basis for its conclusion that the defendant should receive the sentence imposed." *United States v. Gibbs*, 897 F.3d 199, 204 (4th Cir. 2018) (internal quotations omitted). "A sentence within the Guidelines range is presumed on appeal to be substantively reasonable." *United States v. Helton*, 782 F.3d 148, 151 (4th Cir. 2015).

Amin's sentence satisfies these requirements. Congress authorized a supervised release term of "any term of years or life" for terrorism-related offenses, including Amin's offense of conspiracy to provide material support to a foreign terrorist organization. *See* 18 U.S.C. §§ 3583(f), 2332b(g)(5)(B). Because the reimposition of a lifetime of supervised release was within the Sentencing Guidelines, it is presumptively reasonable. Moreover, the sentence was consistent with other courts' approaches of imposing lifetime supervised release for terrorism-related offenses. *See, e.g.*, *United States v. Tounisi*, 900 F.3d 982, 989 (7th Cir. 2018); *United States v. Wright*, 747 F.3d 399, 416 (6th Cir. 2014).

Amin claims the lifetime term of his supervised release is an "extreme and unusual remedy" that should be "viewed critically." Appellant's Br. at 37, 39. He suggests that lifetime release should typically be affirmed only in cases involving "child pornography or violent crimes." *Id.* at 37. But the appropriateness of lifetime supervised release in one

serious class of cases does not render it inappropriate for another. Amin combined extremist ideology and technical sophistication to build widespread support online for ISIS's brutal campaign of terror and violence. He simultaneously coaxed men into traveling to Syria with deadly consequences. Upon his release from prison, Amin continued to spread toxic messages online, including a call to "exterminate" all non-believers of ISIS's jihadist ideology—the vast majority of the global population. J.A. 248. It was eminently reasonable for the district court to reimpose a lifetime of supervised release under these circumstances.

### V.

Ali Amin was a young man of some technical ability, curiosity, and ambition. Tragically, he diverted this potential for constructive contributions to society to the most violent and destructive ends. His case illustrates the flexibility and practicality that must inhere in the administration of supervised release to deal with cases such as his. Both the district court and the probation officer acted within their sound discretion. To nitpick their efforts in this case would risk the impairment of supervised release as an important component of criminal justice sentencing. For the foregoing reasons, the judgment is affirmed.

*AFFIRMED*